MAURA MCKEAG LEACH vs. COMMISSIONER OF THE
MASSACHUSETTS REHABILITATION COMMISSION.[1]

No. 03-P-1540.

Suffolk. September 20, 2004. - May 19, 2005.

Present: GELINAS, SMITH, & COWIN, JJ.

*Anti-Discrimination Law,* Handicap, Employee. *Employment,* Discrimination.

In a civil action alleging handicap discrimination in employment in violation
of G. L. c. 151B, § 4(16), the defendant employer was not obligated to
anticipate the likelihood that the plaintiff employee would develop a certain
condition from the time of her hire through the time one and one-half
years later when she first complained to the defendant of the condition,
where development of the condition was by no means a certainty, and
where the plaintiff gave no indication that she might suffer from the condi-
tion prior to her specific complaint. [566-568]

In a civil action alleging handicap discrimination in employment in violation
of G. L. c. 151B, § 4(16), the plaintiff employee failed to present suf-
ficient admissible evidence at the summary judgment stage to warrant a
finding in her favor either that she could perform the essential functions of
her job with or without reasonable accommodation, or that, despite her
needing reasonable accommodation in order to perform the essential func-
tions, the defendant employer denied her such reasonable assistance.
[569-570]

CIVIL ACTION commenced in the Superior Court Department on
February 3, 1999.

The case was heard by *Christopher J. Muse,* J., on a motion
for summary judgment.

*Thomas O. Moriarty* for the plaintiff.

*David Stanhill,* Assistant Attorney General, for the defendant.

COWIN, J. The plaintiff, Maura McKeag Leach, commenced

---

[1]Although the complaint was nominally brought against the Commissioner
of the Massachusetts Rehabilitation Commission, the parties have treated the
commission as the defendant. We adopt the parties' position that the action is
effectively against the commission.

proceedings against her employer, the Massachusetts Rehabilitation Commission (commission or defendant), alleging, somewhat ironically, that the commission had violated the provisions of G. L. c. 151B, § 4(16), by failing to accommodate her handicaps (a hearing disability, followed by repetitive stress injury).[2] A judge of the Superior Court allowed the defendant's motion for summary judgment and dismissed the complaint. The plaintiff alleges various errors, asserting that (1) the defendant had an obligation to provide certain accommodations notwithstanding the absence of a specific request by the plaintiff therefor; (2) the judge erred in concluding that accommodation was unnecessary when an employee can perform the essential functions of the job without it; (3) the defendant failed to provide reasonable accommodations between August, 1996, and November, 1996; and (4) the judge's determination that the plaintiff, even with accommodation, could not perform the essential functions of her job was not warranted. We conclude that, on this record, the defendant was not obligated to anticipate the need to accommodate the plaintiff's repetitive stress injury without a request by the plaintiff; the plaintiff failed to present sufficient evidence to support a finding that the defendant did not provide reasonable accommodation; and the plaintiff failed to show that she could perform the essential functions of her job even with reasonable accommodation. Accordingly, we affirm the judgment for the defendant.

The material facts are not disputed. The plaintiff has a hearing disability. In August, 1994, she was hired by the defendant, a State agency that assists disabled clients to find employment, for the full-time position of vocational rehabilitation counselor. Because of her hearing handicap, the defendant provided the plaintiff with a teletypewriter so that she could communicate with others by means of typing messages carried over telephone

---

[2]General Laws c. 151B, § 4, as inserted by St. 1983, c. 533, § 6, provides, in relevant part: "It shall be an unlawful practice: . . . (16) For any employer . . . to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation."

lines. She was also required, as were other employees of the defendant, to use a computer on a regular basis.

The plaintiff first experienced the physical symptoms of repetitive stress injury (RSI) in the fall of 1995. She did not bring the condition to the attention of any representative of the defendant at this time or for a number of months thereafter. However, by March, 1996, the pain had increased, and the plaintiff complained to the defendant's general office secretary. She left work at this time, not returning until August, 1996.[3]

From some time prior to the hiring of the plaintiff in August, 1994, the defendant was aware of the science of ergonomics,[4] as well as the increased risk experienced by hearing impaired persons of contracting RSI because of physical stress resulting from the use of communication expedients such as the teletypewriter. Indeed, the defendant assigned personnel to study the subject, and received recommendations that more should be done to make the commission's work stations, especially those occupied by employees with a higher risk of developing RSI, ergonomically sound. In addition, during this period the defendant received periodic complaints from employees regarding their experiencing of symptoms of RSI.

Prior to her return to work on a part-time basis in August, 1996, the plaintiff requested a swivel chair and a lower desk. Upon her return, the plaintiff discussed further accommodations with James Sarno, the director of the commission's Somerville regional office and the plaintiff's unit supervisor. She was immediately given a new ergonomic chair as well as a reduced caseload and work hours. In addition, encouraged to do so by the defendant, the plaintiff requested that a rehabilitation engineer study her workspace. The request was granted, and the rehabilitation engineer recommended that a special computer desk be provided; that additional lamps be added to reduce eyestrain (not related either to the plaintiff's hearing disability

---

[3]The plaintiff received workers' compensation benefits both for this period and thereafter until July 28, 2001.

[4]Ergonomics is defined as "an applied science concerned with the characteristics of people that need to be considered in designing and arranging things that they use in order that people and things will interact most effectively and safely." Webster's Third New Intl. Dictionary 771 (2002).

or to her RSI); and that the plaintiff resist her tendency to lift the little fingers while typing because of the stress caused to the tendons in her hands. Subsequently, an additional recommendation of a split keyboard was included.

Between November and December, 1996, the defendant provided the plaintiff with an ergonomic desk, a split keyboard, and a wrist pad. The defendant also arranged for adjustments to the new ergonomic chair that the plaintiff had previously received. In response to the plaintiff's further requests, the defendant assigned another employee to assist the plaintiff with typing on a part-time basis; hired a full-time vocational counselor to assist the plaintiff with her caseload; and arranged for a head clerk to provide additional assistance as necessary. The defendant did not provide the recommended additional lighting, nor did it accede to the plaintiff's request for increased assistance by other commission personnel.

Despite these accommodations, by December, 1996, the plaintiff was unable to work an eight-hour day, unable to type on the modified computer keyboard, unable to use the teletypewriter, and unable to write reports or communicate with others by means of sign language. She attempted to continue to work despite these limitations and the accompanying discomfort. In April, 1997, her physician advised that, despite various medications, therapies, and ergonomic adjustments to her work station, the plaintiff had not achieved permanent relief, and that "[h]er symptoms seem to be exacerbated by stress and prolonged work at the computer keyboard."[5] The employee left work again, this time apparently permanently. Although the defendant thereafter offered that she could return to the position, the plaintiff did not accept the offer.

We address first the plaintiff's proposition that the defendant was obligated to anticipate the likelihood that she would develop RSI during the period of August, 1994 (her date of hire), through March, 1996 (when she first complained to the defendant of the condition), and arrange to provide accommodations at that time. It does not appear to be disputed that the defendant accommodated the plaintiff's hearing disability per se. What the

---

[5]The plaintiff had, however, testified at a deposition that she in fact spent very little time at her computer because her assistant did most of that work.

plaintiff complains of initially is that the defendant did not, during the first one and one-half years of her employment, recognize that she, as an individual with a hearing disability, was a candidate for RSI, and take steps to accommodate the potential RSI condition at that time.

We consider this an unrealistically demanding standard and one not required by applicable legal principles. Ordinarily, an employer's obligation to attempt to accommodate a handicapped employee comes into being when the employee brings his or her need for accommodation to the employer's attention. See *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 457 (2002); *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 632, 649 n.21 (2004). The guidelines promulgated by the Massachusetts Commission Against Discrimination (MCAD), which we regard as persuasive, though not binding, interpretive assistance, see *Dahill* v. *Police Department of Boston*, 434 Mass. 233, 239 (2001), indicate that it is generally "the responsibility of the individual with a disability to inform the employer that an accommodation is needed." MCAD Guidelines: Employment Discrimination on the Basis of Handicap Chapter 151B, § VII.A (1998) (MCAD Guidelines).[6] To the same effect, see *Reed* v. *LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (interpreting Americans with Disabilities Act).

We recognize that there may be situations in which a request by the employee is unnecessary. These result from circumstances such as a condition that makes it obvious that accommodation is required, or a condition that renders the employee incapable of making a request. See *Reed* v. *LePage Bakeries, Inc., supra* at 261 n.7. Such situations will, by their nature, be infrequent, and there was no evidence that such circumstances existed in this case. With the accommodations that the defendant provided with respect to her hearing disability, the plaintiff functioned "normally most of the time." *Ibid.* While hearing-disabled

---

[6]We acknowledge that the MCAD Guidelines on the subject were finalized in 1998, subsequent to the time at which the plaintiff was obligated to notify the commission that she desired accommodation. Nevertheless, the Guidelines themselves indicate that they are intended to reflect existing practices and preferences. See MCAD Guidelines § I.

individuals in positions involving the use of equipment such as computers and teletypewriters are more susceptible to RSI than is the general population, development of the condition in this population subset is by no means a certainty, and prior to March, 1996, the plaintiff gave no indication that she might suffer from the condition. That the defendant was aware of the relationship between hearing disabilities and an increased risk of RSI, and that it had embarked on a program to improve its responses to clients and employees on the subject, does not mean that it was on notice that a specific individual (the plaintiff) required accommodation.

We turn, then, to the period (March, 1996, forward) following the plaintiff's specific complaint regarding her RSI and her requests for accommodations. It is at this point, it appears to us, that each party diverts from the central question. The plaintiff accuses the motion judge of ignoring the proposition that accommodations may be required even though an employee is capable of performing the essential functions of a position without them. See *New Bedford* v. *Massachusetts Commn. Against Discrimination*, 440 Mass. 450, 463 n.27 (2003); *Carroll* v. *Xerox Corp.*, 294 F.3d 231, 237-238 (1st Cir. 2002). We do not locate such an error in the judge's decision. Indeed, the judge implicitly acknowledged the principle on which the plaintiff insists by citing *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 383 (1993) (qualified individual with handicap is one who can perform the essential functions of the job, *with or without* reasonable accommodation).[7] Regardless, as the judge correctly concluded that the plaintiff had not shown that she could perform the essential functions of the job even *with* reasonable accommodations, any consideration of her rights in the event of a theoretical ability on her part to perform would be wholly hypothetical, and we do not undertake it.

On its part, the employer argues that the plaintiff failed to prove that she was a "qualified handicapped person" as defined in G. L. c. 151B, § 1(16), and thus she is not entitled to protection pursuant to G. L. c. 151B, § 4(16). A "qualified handicapped person" is one "who is capable of performing the es-

___

[7]For a recent discussion of the concept of "essential functions," see *Cargill* v. *Harvard University*, 60 Mass. App. Ct. 585, 594-597 (2004).

sential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." G. L. c. 151B, § 1(16), as inserted by St. 1983, c. 533, § 2. Consequently, the definition by itself does not decide the outcome. Were the plaintiff to prevail on the proposition that she was capable of performing with or without accommodation, she would then have established that she is a "qualified handicapped person." If she is unable to demonstrate that she can do the job, with or without accommodation, then she is not a "qualified handicapped person." The definition of "qualified handicapped person" and the merits of an individual plaintiff's case appear to be entirely intertwined.

We therefore address what appears to us to be the crux of the case, i.e., whether the plaintiff presented sufficient admissible evidence at the summary judgment stage to warrant a finding in her favor either that she could perform the essential functions of the job with or without reasonable accommodation, or that, despite her needing reasonable accommodation in order to perform the essential functions, the defendant denied her such reasonable assistance. We agree with the motion judge that the evidence was insufficient to support either proposition. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991); *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. at 444.

The evidence demonstrated that once the plaintiff informed the defendant's agents of the onset of RSI, the defendant in fact engaged in the kind of "open and ongoing dialogue" with the employee that the MCAD Guidelines envision. See MCAD Guidelines § VII. This, together with the advice of a rehabilitation engineer, resulted in a reduction in the plaintiff's caseload; a reduction in her hours; acquisition of a new ergonomic chair, and subsequent adjustment of the chair; acquisition of a new desk, computer keyboard, and wrist pad; part-time assistance with computer work; assignment of a vocational counselor to assist with the now-reduced caseload; and additional assistance by the head office clerk. These efforts, perhaps influenced by the defendant's own statutory mission and institutional sympathies for problems of this nature, were the antithesis of a failure to accommodate. Indeed, while the defendant would

have the burden of proof on the subject, the plaintiff's demands appear to us to encroach on the defendant's right not to be subjected to undue hardship as a result of an accommodation. See G. L. c. 151B, § 4(16).[8]

The plaintiff points to requests for accommodation that were denied. She was not provided with additional lighting, yet no relationship was shown between better lighting and the easing of the symptoms of RSI. The plaintiff complains further that the defendant did not address her requests for a full-time assistant, providing her only with the part-time help of employees with other responsibilities. However, the commission is an agency with limited, publicly funded resources. There comes a point at which those resources must be preserved for the commission's clients. In sum, we conclude that no reasonable fact finder could determine on this record that the defendant failed in its legal obligation to provide reasonable accommodation to the plaintiff's handicap.

Despite accommodations which, as set forth above, were not shown to be less than reasonable in the circumstances, the plaintiff has not demonstrated that she was capable of performing the essential functions of the position. Her own physician provided a statement that the plaintiff "has not found permanent relief of her symptoms." Her claim on appeal that she is capable of performing the essential functions despite the pain is belied both by the evidence and by the fact that she left her employment voluntarily and has not returned despite the commission's invitation to do so.

*Judgment affirmed.*

---

[8]The plaintiff observes that although she returned to work in August, 1996, the defendant did not produce much of the new equipment until November-December of that year, and asserts that the delay was itself a failure to accommodate. We agree that delay can be tantamount to denial. There is, however, no requirement that accommodation be instantaneous, and the equipment acquisition process in the State government can be slow. The plaintiff has not shown that any delay was intentional, or that it had an effect on her ability to perform the essential functions of the job.