# United States Court of Appeals
## For the First Circuit

No. 09-1054

EMILIO DECARO,

Plaintiff, Appellant,

v.

HASBRO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Selya and Dyk,* Circuit Judges.

Tani E. Sapirstein, with whom Sapirstein & Sapirstein, P.C. was on brief, for appellant.
Neil Jacobs, with whom Harry T. Daniels, Shari G. Kleiner, Tina Marisam, and Wilmer Cutler Pickering Hale and Dorr, LLP were on brief, for appellee.

September 2, 2009

_____

*Of the Federal Circuit, sitting by designation.

**SELYA**, <u>**Circuit Judge**</u>. This appeal involves two claims of instructional error and a belated claim of error concerning the procedure to be followed by a trial court under the 2003 amendments to Federal Rule of Civil Procedure 51. Concluding, as we do, that no substantive or procedural error tainted the challenged jury instructions, we affirm.

## I. BACKGROUND

We rehearse here only those facts necessary to place this appeal in context.

Plaintiff-appellant Emilio DeCaro worked for defendant-appellee Hasbro, Inc., at its plant in Longmeadow, Massachusetts, for over two decades, most recently as a "first pressman." In that capacity, the plaintiff operated large-scale printing presses used to embellish thousands of sheets of cardboard and paper hourly.

In 2001, the plaintiff informed Hasbro that his doctors had diagnosed him as afflicted with multiple sclerosis. Notwithstanding this diagnosis, he valiantly continued to work. By 2005, however, his condition had deteriorated and he began a regimen of chemotherapy. He left work and, in July of that year, applied for Social Security Disability Insurance (SSDI) benefits.

The plaintiff's SSDI application has particular pertinence here. In it, he made a series of factual averments touching upon his physical condition, some in his own hand and others in the form of answers provided orally to a government

scrivener who typed his responses into the application. These averments (the accuracy of which was disputed at trial) included claims that the plaintiff was unable to work and descriptions of his particular physical impairments.

The plaintiff attempted to return to work on November 29, 2005. A company nurse dashed his hopes; after observing the plaintiff's physical appearance, she forbade him from resuming his position without a doctor's note. On November 30, the plaintiff's physician wrote a letter opining that the plaintiff should eschew employment until the following February.

On February 2, 2006, the plaintiff again tried to reclaim his job. The company demurred, citing the lack of a contemporaneous medical clearance. This sort of pas de deux occurred at least twice more during the next four months; the short of it is that Hasbro did not allow the plaintiff to return to work.

Disappointed by Hasbro's unwillingness to restore him to its work force, the plaintiff brought suit against the company in a Massachusetts state court. In his complaint, filed on June 9, 2006, he asserted a gallimaufry of discrimination and breach of contract claims, all arising under state law. This asseverational array included claimed violations of Massachusetts's principal anti-discrimination statute (Massachusetts General Laws ch. 151B).

Hasbro removed the case to the United States District Court for the District of Massachusetts on the basis of diversity

of citizenship and the existence of a controversy in the requisite amount. See 28 U.S.C. §§ 1332(a)(1), 1441. Following a period of pretrial discovery, the district court granted summary judgment in Hasbro's favor on the breach of contract claim.[1] An eight-day jury trial ensued on the state-law discrimination claims.

As the trial wound down, the district court convened a charge conference, see Fed. R. Civ. P. 51(b), to discuss how the jury was to be instructed. A court reporter attended the charge conference and memorialized what transpired. The court commented upon the parties' proposed instructions and indicated generally which instructions it would give and which it would eschew.

Among other things, Hasbro proposed an instruction concerning both the effect of the statements contained in the plaintiff's application for SSDI benefits and his receipt of those benefits. Its proposed instruction read in relevant part:

> On his application for those benefits Mr. DeCaro represented that he was disabled and unable to work. Mr. DeCaro is bound by his statements on his application for disability and you must presume the truth.

The court noted that it would give an SSDI instruction, but not one that was stated "with as much intensity" as Hasbro's suggested instruction. Instead, the court planned to "say that the jury is entitled to take into consideration the statements made by Mr.

---

[1] That ruling is not challenged on appeal and, thus, we do not dwell on it.

DeCaro in his application for [SSDI] benefits" and may find that those statements "are evidence that in fact he viewed himself as unable to perform the essential functions of his job."

Switching to a different subject, the plaintiff noted conflicting characterizations of the evidence about what Hasbro knew anent his disability and whether and when he had requested some sort of accommodation to permit him to work notwithstanding that disability. Accordingly, he proposed an instruction relating to an employer's duty under Massachusetts law to provide a reasonable accommodation, even in the absence of any request that it do so. The court stated that it had read the relevant case law, see, e.g., Leach v. Comm'r of Mass. Rehab. Comm'n, 827 N.E.2d 745, 749 (Mass. App. Ct. 2005), and had concluded that Massachusetts law does not impose such an affirmative duty on the employer in the circumstances at hand.

The attorneys for the parties delivered their summations the next day. Immediately thereafter, the court charged the jury and simultaneously gave a written copy of the charge to each party.

With respect to the receipt of SSDI benefits and the statements made in the plaintiff's application for those benefits, the court instructed:

> Defendant has pointed to the fact that, while plaintiff was out on voluntary medical leave, plaintiff applied for, and has been continuously receiving, social security disability benefits since November 2005. Plaintiff's application for those benefits

-5-

included representations about the physical requirements of the first pressman position and statements about his physical limitations at the time of his application.

You should examine the statements made by plaintiff in the application for social security disability benefits and consider whether these statements constitute admissions by him that he was in fact unable to perform the essential functions of his job, with or without a reasonable accommodation, at the time he completed his social security disability application. A plaintiff is not permitted to say one thing in applying for disability benefits and another thing, entirely the opposite, in seeking damages for discrimination.

In making this examination you should consider all the facts and circumstances surrounding the submission of the application. To the extent that you find that statements made in plaintiff's application for social security disability benefits were made by plaintiff, you may decide that they reflected the truth when made, and you may consider them as evidence related to Mr. DeCaro's ability to perform the essential functions of the first pressman position, with or without accommodation, on the dates he attempted to return to work.

At the same time, keep in mind that the standard for determining eligibility for social security disability benefits is different from the standard you must apply in determining whether plaintiff was able, with or without reasonable accommodation, to perform the essential functions of his job. The fact that Mr. DeCaro received social security disability benefits is not in itself necessarily fatal to a claim that he was able to perform the essential functions of his job. However, the receipt of benefits and the statements made by plaintiff in applying for them are items of evidence you may consider in making this determination.

With respect to the initiation of a reasonable accommodation, the court instructed:

> When a plaintiff in a disability discrimination case contends that he was entitled to a reasonable accommodation in order to perform the essential functions of his job, he must present evidence to persuade the jury that he actually initiated a request for the accommodation and engaged in an interactive process with the employer to work out the possible accommodation. As part of this process the employer may request medical records and make inquires of the employee about his medical condition. If you find on the facts of this case that plaintiff never requested a specific accommodation, then you cannot find that defendant violated plaintiff's rights by failing to offer him one.

After completing its charge but before allowing the jury to retire, the court brought counsel to sidebar. There — out of the jury's earshot — it inquired about objections. See Fed. R. Civ. P. 51(b)(2). The plaintiff's attorney objected to the SSDI instruction on two grounds, asserting that the instruction (i) "simply overstates the law in Massachusetts" and (ii) should have told the jurors that the receipt of SSDI benefits was "not fatal at all" to the claims being tried. The lawyer also objected to the accommodation instruction insofar as it obligated the plaintiff, as a condition precedent to recovery, to request a specific accommodation. The district court overruled these objections and sent the jury to the jury room to deliberate.

-7-

To assist the jurors in their task, the court gave them a written copy of its charge. It also prepared a special verdict form. See Fed. R. Civ. P. 49(a). The form, a replica of which is attached hereto as Appendix A, posed a series of questions. Neither party interposed any objection to either the use or the wording of the special verdict form. The parties thus waived the right to object to these matters on appeal. See Clausen v. Sea-3, Inc., 21 F.3d 1181, 1196 (1st Cir. 1994); La Amiga del Pueblo, Inc. v. Robles, 937 F.2d 689, 692 (1st Cir. 1991).

In due course, the jury concluded its deliberations. The first question on the special verdict form has four sub-parts, and the jurors answered all four sub-parts in the negative. These answers memorialized their conclusion that, on the dates in question, the plaintiff was not qualified to perform the essential functions of the first pressman position with or without an accommodation. Because those answers were dispositive, the jury — in accordance with directions contained in the special verdict form — found in favor of Hasbro and refrained from answering any other questions set out in the form.

This timely appeal ensued. We have jurisdiction under 28 U.S.C. § 1291.

**II. ANALYSIS**

We divide our analysis into two segments. The first deals with the objections made at sidebar. The second deals with a newly emergent claim of procedural error.

### A. The Sidebar Objections.

The plaintiff's briefs assign error to the overruling of his objections to the SSDI and accommodation instructions. The defendant counters, as a threshold matter, that the plaintiff's claims of instructional error have been waived. In its view, the plaintiff failed to comply at sidebar with either Rule 51(c)(1), which requires that an objection "stat[e] distinctly the matter objected to and the grounds for the objection," or Rule 51(d)(1)(B), which requires that an objection to a failure to instruct be accompanied by a statement of the desired instruction.

The strictures of Rule 51 are not to be taken lightly. Baron v. Suffolk County Sheriff's Dep't, 402 F.3d 225, 235 (1st Cir. 2005). Accordingly, there is a high price to be paid for noncompliance. A substantial failure to comply with those requirements normally results in forfeiture of the objection to which the failure relates. Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005). Forfeited objections are reviewed only for plain error. Toscano v. Chandris, S.A., 934 F.2d 383, 385 (1st Cir. 1991); Fed. R. Civ. P. 51(d)(2).

We begin with the plaintiff's objections to the SSDI instruction.  The objections, quoted above, are not models of clarity and, although such objections have to be evaluated in light of the colloquy that transpired at the charge conference the day before, see Gray v. Genlyte Group, Inc., 289 F.3d 128, 133-34 & n.1 (1st Cir. 2002); Wilson v. Mar. Overseas Corp., 150 F.3d 1, 7 (1st Cir. 1998), saying that something "simply overstates the law" or that the jury should be admonished that receipt of SSDI benefits is "not fatal at all" does not go very far toward preserving particular legal points.  This is especially so where, as here, the judge did not say that receipt of the SSDI benefits was fatal.  The purpose of a sidebar objection is to inform the judge exactly what he got wrong and what he should do to remedy the incipient harm.

In this case, the problem is compounded.  The plaintiff offers an array of grounds on appeal, and the extent to which each ground might have been apparent from the pretrial discussion varies.

In the end, however, the degree to which the SSDI objections are or are not preserved does not alter the outcome of the appeal.  Consequently, we will assume for argument's sake that the objections to the SSDI instruction were preserved.

No such reservation is required for the plaintiff's asseveration that the jury should have been instructed on an employer's duty to initiate consideration of a reasonable

-10-

accommodation. That objection presented a fairly clear choice between giving such an instruction or withholding it, and the objection echoed an instruction proposed by plaintiff's counsel and discussed in some detail at the charge conference. That the objection itself was terse did not, in the idiosyncratic circumstances of this case, deprive it of force. After all, the root purpose of Rule 51 is to ensure that the district court is given actual notice of the nature and grounds of a party's claim that the court's instructions are deficient; style points are not awarded for the form of an objection. See Wilson, 150 F.3d at 7.

We turn, then, to the merits of the objections, starting with a few words about the standard of review.

Preserved claims of instructional error are reviewed under a split standard. We review de novo questions as to whether jury instructions capture the essence of the applicable law, while reviewing for abuse of discretion questions as to whether the court's choice of phraseology in crafting its jury instructions is unfairly prejudicial. See United States v. Nascimento, 491 F.3d 25, 33-34 (1st Cir. 2007); Elliott v. S.D. Warren Co., 134 F.3d 1, 7 (1st Cir. 1998).

1. **The SSDI Instruction**. The plaintiff challenges the SSDI instruction as inconsistent with the Supreme Court's decision in Cleveland v. Policy Management Systems Corp., 526 U.S. 795

(1999).[2]  He argues that the effect of the instruction was to establish a forbidden presumption that the receipt of SSDI benefits precludes a finding that an employee is able to perform the essential functions of his job, with or without an accommodation.

In order to put this claim of error into perspective, it is useful to step back and examine Cleveland.  There, a district court granted summary judgment in favor of an employer in a suit brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.  The district court reasoned that the plaintiff's application for and receipt of SSDI benefits estopped her as a matter of law from claiming that she was capable of performing the essential functions of her job.  The Fifth Circuit affirmed but softened the reasoning; it held that the receipt of SSDI benefits creates a rebuttable presumption that the employee cannot perform the essential functions of her job.  Cleveland v. Policy Mgmt. Sys. Corp., 120 F.3d 513, 518 (5th Cir. 1997).  Because the plaintiff had failed to proffer evidence sufficient to overcome that presumption, her appeal failed.  Id.

The Supreme Court saw the matter differently.  The Justices reversed, finding the SSDI scheme and the ADA scheme separate and distinct.  526 U.S. at 801-05.  Consequently, receipt of benefits under the former scheme does not create any presumption

_____

[2] The reasoning of the Cleveland Court has been adopted by the Supreme Judicial Court of Massachusetts.  See Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1062 (Mass. 2002).

-12-

(conclusive or rebuttable) with respect to a parallel ADA claim. Id. at 805. Withal, the Court was careful to note that an employee may not simply ignore seeming contradictions between statements made in an application for SSDI benefits and elements of an ADA claim. Id. at 807. Rather, the employee must explain such seeming contradictions. Id.

Seen in this light, we believe that the district court's SSDI instruction comports with the thrust of the Cleveland Court's holding. Pertinently, the court told the jury that the mere "fact that Mr. DeCaro received [SSDI] benefits is not in itself necessarily fatal to his claim." The court further told the jury to "consider" whether the statements made by the plaintiff in applying for SSDI benefits constituted "admissions" as to his inability to perform the essential functions of his job. In resolving that point, the jurors were urged to "consider all the facts and circumstances." Finally, the court warned the jury to "keep in mind that the standard for determining eligibility for [SSDI] benefits is different from the standard you must apply in determining whether plaintiff was able, with or without reasonable accommodation, to perform the essential functions of his job." These are correct statements of the law, consistent both with Cleveland and with Massachusetts law. See Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1062 (Mass. 2002).

-13-

Relatedly, the plaintiff argues that the court erred in failing either to use the phrase "not fatal at all" or to emphasize that a change in conditions from one date to another could constitute an acceptable means of harmonizing seemingly contradictory statements. The first of these points is flatly incorrect: instructing the jury that the plaintiff's statements and the consequent receipt of benefits were "not fatal at all" would have usurped the jury's province.[3] The point of the Cleveland decision is that such statements may or may not be inimical to an employment discrimination claim. Everything depends on interpretation: how the jurors view the statements and the receipt of benefits in the context of the overall situation.

The second part of this objection deals with matters of emphasis and choice of phraseology. While it might have been appropriate for the district court to make an express reference to the effect of a "change in conditions," that reference was not required. In instructing a jury, a trial court is not obliged either to embellish legally correct statements or to cover every factual permutation.[4] Febres v. Challenger Carib. Corp., 214 F.3d

---

[3] While the court's use of the phrase "not in itself necessarily fatal" may have been an awkward locution, that wording is reminiscent of similar language in both Cleveland, 526 U.S. at 797 (using the phrase "does not necessarily estop"), and Russell, 772 N.E.2d at 1062 (similar).

[4] Let us be perfectly clear: we do not suggest that the instruction given by the district court would necessarily be sufficient in all circumstances. Consequently, we do not foreclose

-14-

57, 62-63 (1st Cir. 2000); see United States v. DeStefano, 59 F.3d 1, 2-3 (1st Cir. 1995).

By the same token, we believe that the court's admonition that "[a] plaintiff is not permitted to say one thing in applying for disability benefits and another thing, entirely the opposite, in seeking damages for discrimination," was within the realm of its discretion. That admonition leaves ample room for an explanation as to why two seemingly contradictory statements are not in fact inconsistent.

The plaintiff makes a last-ditch argument to the SSDI instruction. Citing Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509 (8th Cir. 1984), he suggests that a party can successfully appeal a legally correct jury instruction that places undue emphasis on an aspect of the law that favors the other party. See id. at 519. In the abstract, that may well be a correct statement of a legal principle — but the principle has no application here.

A trial judge has broad discretion in deciding how best to communicate complicated legal rules to a lay jury. See, e.g., Febres, 214 F.3d at 62-63. That discretion was not exceeded — or even severely tested — in this case. Both the length of the SSDI instruction and its points of emphasis were warranted by the subtlety of the issue.

--------

the possibility that, in a future case, a different or more detailed instruction might be required, depending on the facts and the issues.

To say more about the SSDI instruction would be supererogatory. That instruction is legally correct and, in the final analysis, its phrasing is within the encincture of the district court's discretion. See United States v. McGill, 953 F.2d 10, 12 (1st Cir. 1992) ("So long as the charge sufficiently conveys the [party's] theory, it need not parrot the exact language that the [party] prefers.").

2. **The Accommodation Instruction**. The plaintiff's other claim of instructional error need not detain us. He complains of the jury instructions regarding an employer's duty to offer a reasonable accommodation to an employee who suffers from a disability. Specifically, he asserts that, under certain circumstances, an employer may be obliged to initiate a discussion about the feasability of such an accommodation. See Leach, 827 N.E.2d at 749. This case, he says, called for such an instruction.

This claim of error is moot. Under the circumstances, an employer's duty to accommodate does not arise unless (at a bare minimum) the employee is able to perform the essential functions of his job with an accommodation. See Cleveland, 526 U.S. at 805-06; Russell, 772 N.E.2d at 1062.

Here, the jury ended its deliberations once it determined that the plaintiff was not able to perform the essential functions of the first pressman position, with or without an accommodation, on any of the four dates in question. See App'x A. The special

verdict form directed the jurors that "[i]f you have answered 'No' as to all four dates, stop. . . . You will have completed your deliberations." Id. That became the law of the case. See Clausen, 21 F.3d at 1196. Therefore, the jury never had occasion to reach the logically subsequent question of the employer's duty to accommodate. It follows inexorably that any error regarding the court's instructions on that issue — and we do not suggest that any error occurred here — was harmless. Consequently, we have no need to address the issue. See Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999).

## B. **The Procedural Objection**.

There is one more bridge to cross. At oral argument, the plaintiff launched an offensive in the form of a complaint that the district court failed to follow the procedure delineated in Federal Rule of Civil Procedure 51. This late-blooming claim of procedural error posits a mistake of law that, under ordinary circumstances, would engender de novo review. Here, however, the circumstances are out of the ordinary: the argument is doubly defeated.

In the first place, the plaintiff did not contemporaneously object when the district court implemented the challenged procedure (that is, when it charged the jury without having first presented the parties with the full text of the charge). Thus, the claim of error is not properly before us. See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a

-17-

bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."). In the second place, the plaintiff did not proffer this claim of error in his opening brief on appeal.  It is common ground that contentions not advanced in an appellant's opening brief are deemed waived.  See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990).

Even were this contention properly preserved, it would be futile.  The plaintiff points out that a recent amendment to Rule 51 requires the court to "inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments," Fed. R. Civ. P. 51(b)(1).  The plaintiff argues that this language in effect directs a trial court to provide counsel with a verbatim copy of its intended jury instructions at the charge conference.  He then notes that the court below first informed him of the exact language of the SSDI instruction when he listened, along with the jury and opposing counsel, to the charge being delivered in open court. This omission, he declares, violated Rule 51(b)(1).

This is an overly crabbed reading of the rule.  Rule 51, in its current form, reflects amendments made in 2003.[5]  These revisions were designed to "capture many of the interpretations

_____

[5] To be sure, Rule 51 was further amended in 2007, but the 2007 revisions were of a purely stylistic nature. Fed. R. Civ. P. 51 advisory committee's note (2007 amendments).

-18-

that have emerged in practice." Fed. R. Civ. P. 51 advisory committee's note (2003 amendments). There is no indication, however, that the drafters envisioned a change in practice as to how the charge conference should be conducted; to the contrary, the revised version of the rule contains language strongly resembling that found in the earlier pre-amendment version. Compare Fed. R. Civ. P. 51(b)(1) (2009) ("The court must inform the parties of its proposed instructions . . . before instructing the jury and before final jury arguments . . . ."), with Fed. R. Civ. P. 51 (2002) ("The court shall inform counsel of its proposed action upon the requests [for instructions] prior to . . . arguments to the jury.").

This family resemblance is critically important because, under the earlier version, a number of courts of appeals had held that the rule did not require the delivery of written jury instructions to the parties before the court actually delivered the charge. See, e.g., Jones v. S. Pac. R.R., 962 F.2d 447, 451 (5th Cir. 1996); Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22-23 (3d Cir. 1984); Beimert v. Burlington N., Inc., 726 F.2d 412, 414 (8th Cir. 1984); Puggioni v. Luckenbach S.S. Co., 286 F.2d 340, 344 (2d Cir. 1961). The relatively minor changes in the text of the rule do not justify deviating from this uniform result.

The plaintiff argues that the drafters of the 2003 revisions intended to equate "proposed action" with "draft

instructions." We disagree. The advisory committee's note states flatly that "[i]t is enough that counsel know of the intended instructions before making final arguments addressed to the issue." Fed. R. Civ. P. 51 advisory committee's note (2003 amendments). That is exactly what the lower court did here.

In any event, we previously have stated that the post-2003 version of the rule, Fed. R. Civ. P. 51(b)(1), does not require the trial judge to supply the parties with a written copy of the instructions before charging the jury. Cipes v. Mikasa, Inc., 439 F.3d 52, 55 n.1 (1st Cir. 2006). Sufficiently informing the parties of the court's proposed instructions is all that the rule requires; no particular convention need be employed. See id.; see also Fed. R. Civ. P. 51 advisory committee's note (2003 amendments) ("It is enough that counsel know of the intended instructions . . . ."). Indeed, some judges, acting within the ambit of their discretion, prefer to instruct juries orally, without ever preparing written instructions.

We conclude, without serious question, that a district court is under no obligation to give the parties the full text of its intended instructions at any time before the jury is charged.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we affirm the judgment of the district court.

**Affirmed**.

EMILIO DECARO,                              )
        Plaintiff                     )
                                  ) C.A. 06-30107-MAP
        v.                            )
                                  )
HASBRO, INC.,                              )
        Defendant                     )

### SPECIAL VERDICT FORM

We the jury unanimously respond to the following questions.

1. Has Plaintiff proved by a preponderance of the evidence that he was able to perform the essential functions of the First Pressman position, with or without reasonable accommodation, on one of more of the following dates:

November 29, 2005          _____          _____
                           Yes               No

February 2, 2006           _____          _____
                           Yes               No

May 15, 2006               _____          _____
                           Yes               No

June 6, 2006               _____          _____
                           Yes               No

Note: If you answered "No" as to all four dates, stop. The foreperson should sign the verdict slip. You will have completed your deliberations.

2. Has Plaintiff proved by a preponderance of the evidence that discrimination by Defendant based on Plaintiff's handicap was a determinative cause of Defendant's decision not to permit Plaintiff to return to work, or not to offer Plaintiff a reasonable, requested accommodation, on one or more of the following dates:

November 29, 2005          _____          _____
                           Yes               No

February 2, 2006           _____          _____
                           Yes               No

May 15, 2006

          _____      _____
          Yes              No

June 6, 2006

          _____      _____
          Yes              No

<u>Note</u>: If you answered "No" as to all four dates, stop. The foreperson should sign the verdict slip. You will have completed your deliberations. If you have answered "Yes" as to one or more of the same dates in both Questions 1 and 2, then proceed to the next question.

       3.    What is the amount of damages that will fairly and reasonably compensate Plaintiff for his lost past wages and emotional distress caused by Defendant's discriminatory conduct?

_____ (in words)

$_____. _____ (in figures)

_____     _____
Foreperson                      Date