Kaplan, Mitchell H., J.
INTRODUCTION
In this action the plaintiffs, Chelsea D. Scott and Tina Brelin-Penney, assert claims for handicap discrimination against the defendants, Encore Images, *255 Inc. (“Encore”), their former employer, and Laurel Mervis (“Mervis”), one of Encore’s owners (collectively the “Defendants”) for violation of G.L.chapter 15 IB.[3] Scott alleges that the Defendants discriminated against him because he was “handicapped.” His wife, Brelin-Penney, does not allege that she was handicapped, but rather contends that she may recover from Defendants under a theoiy of “associational standing.” The matter is currently before the court on the Defendants’ Motion for Summary Judgment. For the following reasons, the Motion for Summary Judgment will be ALLOWED.
FACTS
The following relevant facts are undisputed or viewed in the light most favorable to the Defendants.
Encore is owned by Paul and Laurel Mervis and generally employs approximately fourteen people. Encore manufactures toner cartridges for printers, facsimile machines, and copiers. It also provides in-house and on-site maintenance services to its customers.
Brelin-Penney and Scott are married. Brelin-Pen-ney began work as a full-time bookkeeper at Encore in January 2006. On February 17, 2006, Scott began working for Encore as a Warehouse Coordinator. Scott’s job required him to move and lift boxes and containers weighing up to fifty pounds.
I. Scott’s Claim
On September 11, 2006, Scott fell from a ladder while working in the warehouse and injured his shoulder. Promptly thereafter, Mervis filed a report of injury with Encore’s workers’ compensation insurer, One Beacon Insurance Company (“One Beacon”), and Scott began receiving total temporary disability workers’ compensation benefits on September 20, 2006.
Scott received treatment for his injury at Quadrant Health Strategies (“Quadrant”). On September 14, 2006, Quadrant advised Scott that he could resume work but not lift anything weighing more than ten pounds. On September 27, 2006, Quadrant revised its advice and instructed him not to lift more than five pounds. On September 29, 2006, Scott returned to work, but was physically unable to perform his job and left early due to pain in his shoulder.
Thereafter, Encore hired an ergonomist to work with Scott and develop techniques that might enable Scott to perform his job despite his shoulder injury. The ergonomist performed a “job shadow," and worked with Scott, but his efforts were unsuccessful. Scott continued to be unable to do the heavy lifting and manual work associated with his position as Warehouse Coordinator. Encore did not have another light-duty job available for Scott to do while he recovered from his shoulder injury.
On November 7,2006, Scott met with an orthopedic surgeon. The surgeon told Scott that he should not do any lifting and required shoulder surgery. Scott informed Mervis of the diagnosis and that he would be absent from work. Scott’s last day of work at Encore was November 8, 2006; he did not provide Encore with an anticipated date for his return. The surgery was performed on December 11, 2006.
Following Scott’s departure, Mervis regularly asked Brelin-Penney when he would be returning to work, but she only replied: when his doctors clear him. In January 2007, Mervis requested that Scott and Brelin-Penney meet with her. .At this meeting, Mervis asked Scott what his plans were. Scott responded that he was still recovering from his surgery and could not provide a return date. Encore then hired a new employee to fill Scott’s position as Warehouse Coordinator, but informed this individual that the position was temporaiy/provisional pending Scott’s possible return.
On February 13, 2007, Scott had an appointment with his surgeon who told Scott that Scott was not then ready to return to work, as he could not engage in any heavy lifting. In April 2007, Scott had a followup meeting with the surgeon and was advised that his shoulder would not yet tolerate heavy manual labor and that he might benefit from some type of sedentary work. [4]
In June 2007, Scott reached an agreement with One Beacon to settle his claim for future weekly workers’ compensation benefits on account of the September 11,2007 accident for a lump sum payment of $45,000. The settlement was approved by the Department of Industrial Accidents on July 2, 2007.
Scott did not contact Encore to ask to be allowed to return to work or to notify it of an anticipated date on which he would physically be able to do his job. Instead, on July 3, 2007, Scott (and his wife, Brelin-Penney) filed a complaint against the Defendants with the Massachusetts Commission Against Discrimination (the “MCAD”), which alleged handicap discrimination in violation of chapter 15 IB. On September 30, 2008, the MCAD issued a finding of lack of probable cause on his claims. Scott would have physically been able to return to his job in the fall of2007, but he never provided that information to the Defendants.
II. Brelin-Penney’s Claim
Brelin-Penney claims that, following Scott’s accident, Mervis began a campaign of harassment against her in retaliation for her husband filing a workers’ compensation claim. The facts relevant to her claim, again viewed in the light most favorable to her, follow.
Mervis often pulled Brelin-Penney away from her work to ask her about Scott’s status, how he was doing, and when he would be returning to work. This questioning often occurred during and immediately following key events in the progression of Scott’s workers’ compensation claim. During these inquiries, Mervis was often observed writing in Brelin-Penney’s personnel file.
*256 Brelin-Penney’s son, Isaiah, worked for HCPro, a company located in the same building as Encore. Mervis had helped Isaiah obtain this job by providing him with an introduction to HCPro’s management. On May 17, 2007, Mervis mentioned to A1 Rizzo (“Rizzo”), an HCPro supervisor, that she understood that Isaiah was going to be leaving and moving to Oregon.[5] Mervis later mentioned this conversation to Brelin-Penney and asked why Isaiah had not informed HCPro of his departure plans. At that, Brelin-Penney became upset and accused Mervis of meddling in her life and tiying to harm Isaiah. When Mervis responded by pointing out that she had helped Isaiah obtain this job, Brelin-Penney shouted and cursed at her. Brelin-Penney then stormed out of work, leaving approximately four hours before the end of the work day.
Later that day Paul Mervis contacted Deborah Schreiber, an attorney and Mervis’s sister, for advice.[6] After speaking with Paul, Schreiber telephoned Brelin-Penney and informed her that she was not to return to Encore or contact Mervis in any manner. Paul Mervis then wrote to Brelin-Penney stating:
It is the position of Encore Images that you terminated your employment with us as of 12:30 p.m., Thursday, May 17, 2007, after you verbally assaulted Laurel Mervis and then left the workplace four hours before the end of your shift. Your vitriolic verbal attack of Mrs. Mervis was a disturbing violation of company policy and an extreme exhibit of insubordination ... Do not make any contact with Mrs. Mervis. Any such contact will be considered harassment.
Neither Schreiber’s telephone call nor Paul Mervis’s written notice to Brelin-Penney made any mention of Scott or his employment with Encore.[7]
On July 3, 2007, Brelin-Penney joined with Scott in filing the complaint against the Defendants with the MCAD. She based her handicap discrimination claim on her husband’s handicap and the theory of “associational standing.” As indicated above, on September 30, 2008, the MCAD issued a finding of lack of probable cause. The instant action was then filed.
DISCUSSION
Standard of Review
Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991). “[A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).
Scott’s Claim
The Defendants maintain that Scott cannot establish a claim for handicap discrimination because he cannot demonstrate that he was a “qualified handicap person” within the meaning of chapter 15IB for two reasons: (1) Scott could not perform the essential functions of his job; and (2) even if Scott was technically able to perform his job, as a matter of law, he must be presumed to be disabled during the relevant period, under §48(4), because of his $45,000 lump sum settlement of future workers’ compensation benefits approved on July 2, 2007.
Handicap Discrimination Under G.L.c. 15IB
Under G.L.c. 15IB, §4(16) it is unlawful for “any employer ... to dismiss from employment or refuse to hire, rehire, or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicap person ...” To establish a claim for employment discrimination on the basis of handicap, the plaintiff must demonstrate “that [he] was terminated, that [he] is ‘handicapped,’ that [he] is a ‘qualified handicapped person,’ and that he was terminated because of his handicap.” Russell v. Cooley Dickenson Hosp., 437 Mass. 443, 449 (2002), quoting Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 7 (1998). The element of a discrimination claim at issue in this motion is whether Scott is a “qualified handicapped person,” as defined by §1(16), i.e.,[8] “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16).
Scott’s position as Warehouse Coordinator required him regularly to lift and move boxes and containers weighing up to fifty pounds. It is undisputed that when Scott left Encore in November 2006, Scott was unable *257 to perform these essential duties. Indeed, his surgeon expressly told Scott that he should not do any lifting and needed surgery on his shoulder. In consequence, in order for Scott to establish that he is a “qualified handicap person," he must present evidence that he would have been able to perform his duties with a “reasonable accommodation.” Scott contends that, in this case, reasonable accommodation required that Encore provide him with a temporary light-duly assignment or a temporary leave of absence. There is no support for this position in existing case law.
Temporary Light Duty
Under Massachusetts law, an employer is barred from dismissing employees who are “capable of performing the essential functions of the position involved with reasonable accommodation.” G.L.c. 151B, §4(16) (emphasis added). “In this aspect, the Massachusetts statute is less generous than the [Americans with Disabilities Act (the “ADA”)], which defines ‘reasonable accommodation’ to include reassignment to vacant positions.” Russell, 437 Mass, at 454, citing 42 U.S.C. §12111(10)(B) (1994). The Supreme Judicial Court has specifically stated that a Massachusetts employer has no obligation to transfer an employee to a vacant position or to create a new position for the disabled plaintiff. See id. Even if Encore had had an alternate light-duty position available for Scott, and Scott offers no evidence that it did, it was under no obligation to transfer Scott to such a position. The failure to provide Scott with a temporary light-duty assignment did not constitute a failure to provide a reasonable accommodation.
Temporary Leave of Absence
Under Massachusetts law, “a request for a limited extension [of leave], setting a more definite time for the employee’s return to work, may . . . constitute a reasonable accommodation.” Id. at 455 (emphasis supplied). Chapter 15 IB, however, does not require an employer to provide an employee with an open-ended or indefinite leave as a reasonable accommodation. Id.; see also Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 311-12 (2005) (“This court has rejected the idea that indefinite requests for ‘more time’ to address a disabling condition are reasonable”); Dziamba v. Warner Stackpole LLP, 56 Mass.App.Ct. 397, 405-06 (2002) (“ [Reasonable accommodation [does not] require an employer to wait an indefinite period for the recovery of an employee who has a medical condition that bears on job performance"). The “term ‘reasonable accommodation’ refers to accommodation ‘which presently, or in the immediate future, enables the employee to perform the essential functions of the job.’ ” Russell 437 Mass. at 455, quoting Myers v. Hose, 50 F.3d 278, 283 (4th Cir.1995).
Scott claims that he would have been ready to return to work at Encore in the fall of 2007 and that the Defendants’ failure to provide him with a leave of absence until that time constituted a failure to provide a reasonable accommodation. The court disagrees. First, Scott cites no case, and the court is aware of none, in which a one-year leave of absence was held to be a required reasonable accommodation. Moreover, there is no evidence that Scott ever requested such an accommodation. To the contrary, it is undisputed that: (1) when he left in November 2006, Scott did not provide the Defendants with a return date; (2) in January 2007, when Mervis met with Scott to discuss his plans, Scott did not provide a return date; (3) in June 2007 Scott settled his claim for future workers’ compensation indemnity payments for $45,000 and (4) prior to filing his complaint with the MCAD, Scott never asked to return to work or provided an anticipated date on which he could return.[9] Under these circumstances, the Defendants were under no obligation to keep his position open indefinitely and the failure to do so did not constitute a failure to provide a reasonable accommodation.[10]
Presumption of Disability Under G.L.c. 152, §48(4)
Because the court concludes that Scott cannot establish that he is a “qualified handicap person,” the court need not reach the Defendants’ argument under §48(4). Nevertheless, the court notes that the plain language of this provision supports the Defendants’ position. G.L.c. 152, §48(4) states, in relevant part,
. . . the acceptance of any amount in return for the right to claim future weekly benefits shall create a presumption that the employee is physically incapable of returning to work with the employer where the alleged injury occurred. Such presumption shall continue for a period of one month for each fifteen hundred dollar amount included in the settlement for future weekly benefits. No re-employment rights shall inure to such employee under this chapter during any period or presumption of incapacity herein provided.
(Emphasis added.)
Here, Scott accepted a lump sum settlement for $45,000 from Beacon, which was approved on July 2, 2007. Under the statutory language, Scottwas, therefore, presumed to be physically incapable of returning to work at Encore for thirty months, i.e., until January 2, 2010 ($45,000 $1,500 = 30); additionally, he could not demand reemployment until January 2, 2010. See, e.g., Sullivan v. Raytheon Co., 2005 WL3105643 (Mass.Super. Oct. 14, 2005) (Haggerty, J.) [20 Mass. L. Rptr. 162]; Goncalves v. Stop & Shop Supermarket Co., 2001 WL 1839718 (Mass.Super. Dec. 27, 2001) (Cratsley, J.). Surely, an employer cannot be required to hold a position open for over three yeans as a reasonable accommodation.
Brelin-Penney’s Claim
Brelin-Penney does not herself claim to be handicapped. Her claim for violation of G.L.c. 151B is premised on a theory of “associational standing,” i.e., that she is among the class of potential claimants under that statute by virtue of her relationship to a handicapped person. Brelin-Penney argues that the court should recognize associational standing because the *258 MCAD has, under some circumstances, recognized discrimination claims asserted by individuals based on their association with persons within a protected class.
The MCAD has been entrusted with the enforcement of G.L.c. 15 IB, and its interpretation and application of this statute is therefore entitled to deference. See Casa Loma, Inc. v. Alcoholic Beverages Control Comm’n, 377 Mass. 231, 235 (1979). Deference, however, is not abdication. See Martinez v. Commissioner of Pub. Welfare, 397 Mass. 386, 392 (1986) (“[A]n agency has considerable leeway in interpreting a statute it is charged with enforcing. This principle, however, is one of deference, not of abdication, and [courts] will not hesitate to overrule agency interpretations of statutes when [they] are unreasonable.”). An agency cannot exceed the authority conferred on it by statute. See Morey v. Martha’s Vineyard Comm’n., 409 Mass. 813, 818 (1991). Furthermore, statutory language “is not to be enlarged or limited by construction unless its object and plain meaning require it.” Rambert v. Commonwealth, 389 Mass. 771, 773 (1983).
The sole basis for Brelin-Penney’s discrimination claim is her relationship with Scott. She contends that she was discriminated against because Scott filed a workers’ compensation claim. She argues the court should recognize her standing to sue because, in other cases, the MCAD has recognized associational standing. At least as applied to this case, the court is not persuaded by this argument.
Although the ADA specifically prohibits employers from “excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association,” 42 U.S.C. §12112(b)(4), chapter 151B is less generous in this respect in that it does not include a provision recognizing a plaintiffs right to pursue a claim based upon his or her association with a qualified individual. See, e.g., Russell, 437 Mass. at 454 (noting that with respect to other provisions, chapter 15 IB is “less generous” than the ADA). Moreover, the SJC has, in the past, clearly held that “[t]o show an ‘unlawful practice,’ the plaintiff must show discrimination ‘because of his classification in one of the listed categories.” Macauley v. Massachusetts Comm. Against Discrimination, 379 Mass. 279, 280 (1979). Neither the MCAD, nor the court, can add a category for “associated persons” that the Legislature did not include in the statute.[11] Id. at 281-82 (“If the scope of [G.L.c. 15IB] is to be extended, it must be done by legislation”). As Brelin-Penney is not a member of a category of protected persons under chapter 15IB, she cannot assert a claim for alleged violation of that statute.[12]
ORDER
For the reasons set forth above, it is hereby ORDERED that the Defendants’ Motion for Summary Judgment is ALLOWED.

 Encore’s other owner is Mervis’s husband, Paul Mervis.

 In October 2007, Scott enrolled in a six-week truck driver training class. Within a month of completing the training course, he was employed as a truck driver.

 In fact, Isaiah had been making plans to move to Oregon; he left in June 2007.

 Mervis has Multiple Sclerosis and has been advised by her medical providers to avoid stressful situations as stress can exacerbate her symptoms. After the argument with Brelin-Penney, Mervis was very upset and Paul Mervis was concerned about the impact future interactions with Brelin-Penney would have on Mervis’s health.

 In the Statement of Material Facts, Brelin-Penney and Scott contend that, during her phone call with Brelin-Penney on May 17, 2007, Schreiber stated that neither Brelin-Penney nor Scott were to return to Encore. In support of this factual assertion, they reference Brelin-Penney’s affidavit. The statement in the affidavit, however, is contrary to Brelin-Penney’s earlier- deposition testimony which makes no mention of Schreiber saying anything about Scott or his employment with Encore. For this reason, the court disregards this affidavit statement as an attempt to create an issue of fact for summary judgment where none exists. See O'Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993) (stating affidavit testimony which is inconsistent with earlier deposition testimony, in an attempt to create an issue of fact for summary judgment, should be disregarded). The court further notes that its decision would not be any different if Schreiber had mentioned Scott during her telephone conversation with Brelin-Penney for the reasons discussed below.

 For purposes of the Motion for Summary Judgment only, the Defendants concede Scott has established he was handicapped within the meaning of G.L.c. 15 IB and he was terminated from his employment with Encore because of his handicap.

 Scott asserts that he did not contact Encore to request to be allowed to return to work because his employment with Encore was terminated on May 17, 2007. There is no credible evidence within the summaryjudgment record to support this assertion. See supra n. 10. Moreover, even if there were, the fact that his wife received a telephone call stating that he could not return to work, following his wife’s altercation with Mervis, would not excuse Scott from asking to return to work, especially where, to that date, it is undisputed that he had never asked to return.

 Furthermore, the court notes that the summary judgment record suggests that Encore actually did try to accommodate Scott’s handicap. It hired an ergonomist to develop strategies to enable Scott to continue working. See Leach v. Comm’r of the Mass. Rehab. Comm’n, 63 Mass.App.Ct. 563, 569 (2005) (stating an employer’s efforts to find ergonomic solutions to disability problems “were the antithesis of a failure to accommodate”). Also, although Encore hired a replacement for Scott, Encore specifically told the new hire that his employment was temporary/provisional, pending Scott’s possible return to Encore.

 In Macauley, the SJC held that a claim for sexual orientation discrimination could not be pursued because, at that time, that classification was not among the categories listed in G.L.c. 151B. Id. at 281-82. Subsequently, in 1989, the Legislature amended G.L.c. 151B to include sexual orientation as a protected classification.

 The court has some doubt whether Brelin-Penney’s claim would survive summary judgment even if the court accepted her argument for associational standing, but it need not reach this analysis.