# United States Court of Appeals
## For the First Circuit

No. 18-1164

MAYRA F. PENA,

Plaintiff, Appellant,

v.

HONEYWELL INTERNATIONAL, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Stahl, and Lipez,
Circuit Judges.

Mark P. Gagliardi for the appellant.
Neal J. McNamara, with whom Aaron F. Nadich and Nixon Peabody
LLP were on brief, for the appellee.

April 26, 2019

**LYNCH**, **Circuit Judge**.  Plaintiff Mayra F. Pena worked as a machine operator and associate assembler for defendant Honeywell International, Inc. (Honeywell), until Honeywell terminated her employment on June 17, 2013, on the basis of job abandonment.  Pena had not come to work since March 8, 2013.  On September 20, 2013, Pena applied for Social Security Disability Income (SSDI) benefits, asserting that she was totally disabled and had been since March 8, 2013.

On April 16, 2015, Pena filed this suit under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and under various Rhode Island laws, claiming that Honeywell terminated her employment on the basis of her disabilities, failed to provide her with reasonable accommodations, and retaliated against her.  After discovery and after she consistently testified at her deposition that she was totally disabled as of March 8, 2013, in accord with her SSDI application statements, the district court granted Honeywell's motion for summary judgment on all of Pena's claims.  It noted, among other things, Pena's deposition testimony and her SSDI application.  The court correctly held that Pena had not met the requirements of Cleveland v. Policy Management Systems Corporation, 526 U.S. 795 (1999).  We affirm the district court's grant of summary judgment in favor of Honeywell.

I.

A.  Facts

We recount the undisputed facts, examining them in the light most favorable to Pena.  See Murray v. Kindred Nursing Centers W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).  In or about 2008, Honeywell hired Pena as a machine operator and associate assembler at its manufacturing facility in Cranston, Rhode Island.  Pena worked (except for leave) at the facility until March 8, 2013, after which she never returned to work.  On June 17, 2013, Honeywell terminated Pena's employment for job abandonment.

The Cranston facility's various production and assembly areas included the respiratory department,[1] the molding department, the logo department, the quicloc/cedars department, and the SCBA area (SCBA stands for "self-contained breathing apparatus").  Before 2012, Pena usually worked in the respiratory department.  In the molding department, unlike other departments, the machines run twenty-four hours a day, and emit a new part about every thirty seconds.  In other departments, the employees can control the timing of the machines' operation.[2]

---

[1]  At her deposition, Pena stated that she worked mainly in an area called HEPA, and that the respiratory department and HEPA were two different areas of the Cranston facility.

[2]  Some Honeywell employees, not claiming disability, stated that they preferred to work in areas other than the molding department, where they did not have to keep up with the pace of the machines and could more easily socialize.

In 2012, Honeywell decided that all employees working in production and assembly should be cross-trained so that they could work as needed in all departments at the Cranston facility, including in the molding department. Honeywell believed that it was important "to move associate assemblers to departments where customer demand was greatest and, as a result, an employee['s] inability to work in any particular area would burden the production process." This was particularly true in the molding department due to its continuous operation. Honeywell then trained all of its employees, including Pena, to work in all "assembly departments," including the molding department.

In October 2012, Pena was assigned to and worked in the molding department under this policy. Pena then took a medical leave from November 29, 2012, until January 14, 2013. Pena attributed this request for medical leave to her seasonal depression. Before this leave, Honeywell had permitted Pena to take several other medical leaves of absence totaling twenty-three weeks, including from October 14, 2011, to November 21, 2011; from December 16, 2011, to February 13, 2012; and from June 22, 2012, to August 6, 2012.

When Pena returned to the Cranston facility on January 14, 2013, she began working in the molding department four hours per day, two to three times per week. She worked there without

complaint or incident for about one month.  She otherwise typically worked in the respiratory department.

In late February 2013, Pena complained to the Senior Human Resources Generalist, Jose Gouveia, that one of the production leaders had told her to go to the molding department. Pena says she told Gouveia during that conversation that she did not want to work in the molding department because "it was harmful to [her] emotionally."[3]

Pena met with Gouveia, as well as her supervisor, Kevin Dyer, and the Health Safety and Environmental Site Leader, Conor Ryan, on both March 7 and 8, 2013, about her request not to work in the molding department.  At the March 7 meeting, Honeywell personnel requested that Pena provide a letter from her doctor. The next day, Pena provided a letter from her physician, Dr. James Greer.  Dr. Greer's letter, dated March 4, 2013, stated:

> Currently, [Pena] is reporting exacerbation of her anxiety symptoms which are interfering with her ability to function.  She reports that these specifically occur when she is being sent to the moulding [sic] room as

---

[3]    In the same conversation, Pena also told Gouveia that "she was diabetic and the breaks were 15 and 30 minutes apart from her lunch and she could not be 15 minutes late for her coffee nor 30 minutes late for her lunch break."  Gouveia told Pena that such delays were not significant, but if they created a problem he "could revisit the breaks issue."  Pena responded, "I don't like to change my break time, if you want I can get a doctor's note stating that I cannot change my breaks."  The doctor's notes that Pena provided to Honeywell do not address this issue, and Pena does not say she ever raised the issue again.

- 5 -

> opposed to the more typical duties to which
> she is accustomed.

Dr. Greer "request[ed] that [Honeywell] assist her in other placements than in this setting," and stated that Pena "is completely capable of working in other settings." Dr. Greer's letter relied almost entirely on Pena's self-reported symptoms and did not contain a specific medical diagnosis. The letter also did not explain why the molding department, but not any other department or area, exacerbated Pena's symptoms.

Honeywell concluded that Dr. Greer's letter was inadequate to determine what accommodations Pena was requesting and whether Honeywell could meet those requests. On March 8, 2013, Ryan and Gouveia told Pena that the only work available to her was in the molding department, so if she refused to do that work, she would have to go home. Pena decided to go home, and never returned to work after that day.

Within a week, Pena had retained an attorney, Veronika Kot. Kot told Pena not to communicate with any Honeywell personnel, as Kot would handle all such communications.

Honeywell did not know that Pena had retained counsel, and repeatedly attempted to contact Pena to better understand her condition and determine what accommodations, if any, would be appropriate. In late March 2013, Gouveia sent Pena a Reasonable Accommodations Request Form.

On April 2, 2013, Honeywell's Associate Director of Health Services, Dr. Elizabeth Jennison, wrote to Dr. Greer, asking for "additional documentation to understand the medical necessity for [Pena's] request." Dr. Jennison's letter also asked Dr. Greer to "clarify how [Pena's] anxiety symptoms could allow her to work in many areas of the plant, while interfering with her ability to function in one area of the plant, the molding department, for which she is equally qualified and trained," and requested supporting medical documentation.[4]

In early April 2013, Pena submitted the Reasonable Accommodations Request Form to Honeywell, which was dated April 2, 2013. On the form, Pena stated that she was "unable to work in molding" because "the noise, speed and overall environment gives [her] anxiety, palpitations." On the form, Pena also stated, "I had been offered many permanent positions in molding while still working through an agency and refused because I knew 11 years ago that I could not perform this job."

The physician's portion of the Reasonable Accommodations Request Form was left blank, but Pena attached a second letter from Dr. Greer dated April 2, 2013. This letter stated that Dr. Greer diagnosed Pena as having "Major Depressive Disorder,

_____

[4] At some point, Honeywell set up an appointment for Dr. Greer to come to the Cranston facility in person to discuss Pena's condition, but Dr. Greer did not attend because he "didn't have time in [his] busy practice" to visit patients' places of work.

Recurrent, Severe." The letter stated that Pena "is eager to return to work in her previous capacity," and that Dr. Greer could "state with a reasonable degree of medical certainty that continued assignment to the more recent work setting will result in worsening stress and further exacerbation of her condition." Dr. Greer's letter did not attempt to explain why his diagnosis of Pena would allow her to work everywhere except in the molding department.

On April 8, 2013, Gouveia sent a letter to Pena stating, "[y]ou have informed us you signed a release to give your physician permission to send your medical records to our medical department; however, no[] medical records have been received. As a result, and at the moment, we have insufficient information to assess your request." The letter also stated that while Honeywell "await[ed] the medical information required to assess [her] request," Pena had the following options in the meantime: returning to work and performing her regular duties, including in the molding department, which was "required of all employees in [Pena's] position"; remaining on unpaid medical leave; or using any paid time off she might have available.

Gouveia sent a follow-up letter to Pena on April 22, 2013, stating that Honeywell had not yet received any information from Pena's physician. That same day, Attorney Kot telephoned Gouveia. This was the point at which Honeywell became aware that Pena had retained counsel. Honeywell's in-house employment

counsel, Jacqueline Rolfs, wrote to Kot later that same day, asking her to review Honeywell's correspondence with Pena to understand Honeywell's requests for additional medical records.

On April 23, 2013, Kot responded to Rolfs's letter in writing, stating that Pena had already provided two doctor's notes, and that Honeywell's request for a "release of all her sensitive medical records, including mental health records," was an "unnecessary and prohibited intrusion upon her privacy."

On April 25, 2013, Rolfs sent a letter to Kot, attaching the prior correspondence between Honeywell, Pena, and Dr. Greer. This letter detailed Honeywell's attempts to communicate with Pena, and stated that Honeywell had not asked for all of Pena's records, but rather, only those records that would explain how her symptoms prevented her from working in the molding department. Rolfs's letter also stated that "Honeywell remains willing to work with your client to assess her reasonable accommodation request. However, without the cooperation of your client and her physician in providing responses to Honeywell's reasonable questions about this request, we cannot proceed further in that process."

Kot responded to Rolfs in a letter dated April 30, 2013, accusing Honeywell of violating the ADA and of threatening to terminate Pena's employment if she did not return to work without accommodations. Kot's letter also stated that she would provide another letter from Pena's doctor shortly.

On May 6, 2013, Kot wrote to Rolfs again, expressing concern that Honeywell management had not provided Pena with "the appropriate support" and instead had "apparently . . . urged [Pena] to quit and apply for SSI [Supplemental Security Income]" (Honeywell disputes this). Kot's letter enclosed a memorandum from Dr. Greer, stating that Pena "has reported repeatedly and consistently" that the molding room was stressful because of "a variety of factors which included increased noise levels, chemical odors, and the presence of robotics." Dr. Greer's memorandum also stated, "I cannot specifically identify particular issues there which might exacerbate her stress, but can state with a reasonable degree of medical certainty that there is a direct causal relationship between her working in that setting and the exacerbation of her symptoms." The memorandum attached four progress notes from Pena's visits with Dr. Greer that had taken place between March 4 and April 22, 2013.

Rolfs sent a letter to Kot on May 22, 2013, stating that Dr. Greer's most recent memorandum still did not explain the connection between Pena's diagnosis and her ability to work in the molding department, because all of the items mentioned were also true of work conditions in other departments. The letter explained that:

> The noise level in molding is not appreciably different than that in respiratory. Indeed, employees in both areas are required to wear

> ear plugs.  Nor is there any difference in the chemical odors between respiratory and molding.  In addition, there are robotics in both molding and respiratory, and all are enclosed.

The letter stated that "all employees who work on the floor at this Honeywell facility will be required to rotate into molding as they complete the necessary training.  The rotations are as brief as 15 minutes, or as long as one week."  The letter also stated that "[r]espiratory will remain Ms. Pena's primary assignment," but that "Ms. Pena and the other employees will rotate among all the areas in the facility, not just molding."  Rolfs's letter also repeated that Honeywell only sought medical records relevant to Pena's request for reasonable accommodation.  It stated that "no one at Honeywell has suggested that Ms. Pena quit and apply for SSI."  The letter further stated that Dr. Greer had not called Honeywell's Associate Director of Health Services, Dr. Jennison, as Honeywell had requested, and asked that Dr. Greer call Dr. Jennison as soon as possible.

Honeywell personnel did not hear from Kot after May 6, 2013.  But the record shows, and her counsel at oral argument affirmed, that Pena had counsel at the time of each of the following crucial events.

On June 17, 2013, after Pena had been absent for over three months and had used all of her medical leave, Honeywell terminated Pena's employment on the basis of job abandonment.

On September 20, 2013, Pena applied for SSDI benefits. Pena was represented by different counsel, Amanda DelFarno, for her SSDI application. Pena's SSDI application included the statements "I became unable to work because of my disabling condition on March 8, 2013," and "I am still disabled." The application also stated:

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment, or both. I affirm that all information I have given in connection with this claim is true.

That same day, Pena was given an electronic receipt for her SSDI application, which stated, "[y]ou declared under penalty of perjury that you examined all the information on this form and it is true and correct to the best of your knowledge. You were told that you could be liable under law for providing false information." The receipt stated that Pena should review her SSDI application and call the telephone number provided within ten days if Pena disagreed with any of the statements in her application. Pena does not say that she ever contacted the Social Security Administration to change any statements in her SSDI application.

On September 29, 2015, Pena testified at a hearing before an administrative law judge (ALJ). At the hearing, an impartial medical expert testified that "the medical evidence of record shows

that the claimant has a 'core problem' of a somatoform disorder while translating everything to physical symptoms."[5]  On October 16, 2015, the ALJ granted Pena's SSDI application in a five-page decision, finding that Pena had been suffering from somatoform disorder and was totally disabled as of March 8, 2013.

B.    Procedural History

On April 16, 2015, Pena, represented by new counsel, Mark Gagliardi, filed a complaint in Rhode Island Superior Court, which Honeywell removed to federal court on the basis of diversity jurisdiction.  Pena's twelve-count complaint asserted claims under the federal ADA, 42 U.S.C. §§ 12101 et seq.; the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws §§ 42-112-1 et seq.; the Rhode Island Fair Employment Practices Act, R.I. Gen Laws §§ 28-5-1 et seq.; the Civil Rights of People With Disabilities Act, R.I. Gen. Laws. §§ 42-87-1 et seq.; and the Rhode Island Whistleblower's Protection Act, R.I. Gen. Laws §§ 28-50-1 et seq.  The Complaint alleges that Honeywell failed to provide Pena with reasonable accommodations (Counts I through IV), terminated her employment on the basis of her disabilities (Counts V through VIII), and terminated her employment in retaliation for reporting discriminatory conduct (Counts IX through XII).

---

[5]    Pena states that somatoform disorder is "a form of mental illness that can affect different organs and body systems and cause bodily symptoms, including pain, neurologic[al] problems, gastrointestinal complaints, and sexual symptoms."

During discovery, Pena's deposition was taken on November 3, 2016. She does not say that she filed any corrections to her deposition transcript. After the completion of discovery, in February 2017, Honeywell moved for summary judgment on all of Pena's claims. Pena's counsel filed an opposition to Honeywell's motion for summary judgment on March 28, 2017, the day it was due. The opposition attached documents and letters as evidence, but did not attach any deposition transcripts. The next day, Pena's counsel filed an "addendum" to the opposition, which included six deposition transcripts and an affidavit executed by Pena on March 29, 2017, the day after the opposition had been due. That same day, Pena's counsel also filed a statement of undisputed facts and a statement of disputed facts. On April 11, 2017, Honeywell filed a reply brief, which included objections to Pena's late filings, including the affidavit. That same day, Pena filed a motion for a retroactive extension to file the "addendum," statement of disputed facts, and statement of undisputed facts. Later that same day, Honeywell objected to this motion. On April 26, 2017, the district court granted Pena's motion for an extension.

The magistrate judge held a hearing on Honeywell's motion for summary judgment on June 19, 2017. On September 22, 2017, the magistrate judge entered a report and recommendation that Honeywell's motion be granted. Pena v. Honeywell Int'l Inc., No. CV 15-179 WES, 2018 WL 582579, at *3-*12 (D.R.I. Jan. 29,

2018).  On January 29, 2018, the district court accepted the report and recommendation and granted summary judgment in Honeywell's favor on all counts.  Id. at *3.  Pena timely appealed.

II.

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We review the district court's disposition of a summary judgment motion de novo, 'scrutiniz[ing] the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences.'"  Murray, 789 F.3d at 25 (quoting Noviello v. City of Bos., 398 F.3d 76, 84 (1st Cir. 2005)).  If the record is "deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden" of "demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law."  Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000).

A.   Allegation Termination Was Based on Pena's Disabilities

The ADA forbids employers from terminating the employment of a "qualified individual on the basis of disability."[6]

---

[6]     "Rhode Island courts look to federal case law construing the [ADA] in evaluating analogous state law discrimination claims."  Pena, 2018 WL 582579 at *3 n.1 (citing Hodgens v. Gen. Dynamics, 144 F.3d 151, 158 n.1 (1st Cir. 1998); Barber v. Verizon New England, No. 05-390-ML, 2006 WL 3524465 at *3 n.1 (D.R.I. Dec.

42 U.S.C. § 12112(a). A prima facie case of disability discrimination requires the plaintiff to show that (1) she was disabled within the meaning of the ADA, (2) she was a "qualified individual," and (3) the defendant took an adverse employment action against her on the basis of her disability. Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005); 42 U.S.C. § 12111(8).

Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). By contrast, a successful SSDI applicant must be physically and mentally impaired such that she cannot do her previous work, or "any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). This difference creates an obvious tension.

In Cleveland, the Supreme Court reversed a Fifth Circuit decision that had created a rebuttable presumption that a plaintiff's filing of an SSDI application precluded her from being a "qualified individual" under the ADA. 526 U.S. at 799-800, 807. The Court remanded to the lower court for the purpose we quote later. Id. at 807.

6, 2006); Kriegel v. State of Rhode Island, 266 F. Supp. 2d 288, 296 (D.R.I. 2003)). We will do the same.

- 16 -

The Court held that an ADA plaintiff in an employment discrimination action is not judicially estopped from establishing that she can perform the essential functions of her job with reasonable accommodations solely because she has previously applied for and received SSDI benefits. Id. at 802. It went on from there to establish what a plaintiff must show. Id. at 801-07.

The Court stated that the first question was whether there was an inconsistency between a plaintiff's prior SSDI statements and her position in the ADA litigation. Id. at 802. The Court stated that there are "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." Id. at 803. The Court noted that while "the ADA defines a 'qualified individual' to include a disabled person 'who . . . can perform the essential functions' of her job 'with reasonable accommodation,'" SSDI "does not take the possibility of 'reasonable accommodation' into account." Id. (alteration in original) (emphasis omitted) (quoting 42 U.S.C. § 12111(9)(B)). Instead, SSDI adjudications involve a "five-step procedure that embodies a set of presumptions about disabilities, job availability, and their interrelation."[7] Id. at 804 (citing 20

_____

[7] Under this scheme, some conditions are presumed to be disabling. Cleveland v. Policy Mgmt. Sys. Corp., 120 F.3d 513, 517 (5th Cir. 1997) (citing 20 C.F.R. § 404.1520(d)), vacated on other grounds, 526 U.S. 795, 804 (1999). Pena does not argue that

- 17 -

C.F.R. §§ 404.1520, 404.1525, 404.1526, 404.1560). These presumptions "eliminat[e] consideration of many differences potentially relevant to an individual's ability to perform a particular job" under the ADA. Id. Cleveland also noted that SSDI benefits are sometimes awarded "to individuals who not only can work, but are working," such as those on a statutory nine month trial-work period to test their ability to return to work. Id. at 805 (citing 42 U.S.C. §§ 422(c), 423(e)(1); 20 C.F.R. § 404.1592 (1998)).

Cleveland then stated that "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." Id. at 807. To defeat summary judgment, the plaintiff's "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Id.

Significantly, the plaintiff in Cleveland had argued in her brief that her SSDI statements "were made in a forum which does not consider the effect that reasonable workplace

_____

her SSDI application relied on a presumption that her condition was disabling or that she was on a trial-work period.

- 18 -

accommodations would have on the ability to work," and that her SSDI statements were "'accurate statements' if examined 'in the time period in which they were made.'" Id. The Court rejected the plaintiff's argument that this was all that was needed. The court remanded the case so that the parties could "have the opportunity in the trial court to present, or to contest, [the plaintiff's] explanations, in sworn form where appropriate." Id.

Pena argues that she has given an adequate explanation for the apparent inconsistency between her SSDI statements and her position in this litigation. She first argues that it is enough for her to say in her brief that being disabled under the ADA is different from being disabled for SSDI benefits, because the ADA takes into account an employer's duty to make reasonable accommodations, while SSDI does not. Pena argues that if her SSDI application or the ALJ had asked if she needed disability accommodations to work, she would have responded "yes." She states that this is sufficient to meet her burden under Cleveland. This misreads (and would read out of the law) Cleveland's reasoned explanation requirement. When the plaintiff in Cleveland made these same general arguments, the Court did not accept them; rather, it remanded for factual findings. Id.

This court has interpreted Cleveland before, and rejected the argument Pena makes. In DeCaro v. Hasbro, Inc., 580 F.3d 55 (1st Cir. 2009), we upheld a jury instruction that the

standard for receipt of SSDI benefits is different from the standard for whether the plaintiff was able, with or without reasonable accommodations, to perform the essential functions of his job. Id. at 62. We affirmed that the mere fact that the employee "received [SSDI] benefits is not in itself necessarily fatal to his claim," but that the receipt of SSDI benefits could be an admission by the employee of his inability to perform the essential functions of his job, and that the question turned on "all the facts and circumstances." Id. DeCaro rejected the argument that the mere differences in standards was all that a plaintiff had to show; the burden was on the plaintiff to offer a sufficient explanation. Id.

In Sullivan v. Raytheon Co., 262 F.3d 41 (1st Cir. 2001), we upheld a grant of summary judgment to the employer where the plaintiff offered "no evidence to explain" why his prior SSDI statements were consistent with his claim that he could perform the essential functions of his job with reasonable accommodations. Id. at 47. Like here, the plaintiff, in his deposition testimony, had "continually and consistently claimed that he was totally disabled" from the date the defendant terminated his employment, and that his condition had "stayed the same or worsened" after that. Id. We stated that to defeat summary judgment, the plaintiff needed to produce "evidence to explain this discrepancy." Id.

- 20 -

Nor has Pena's argument been accepted by any circuit. The Third Circuit has held that "simply averring that the [ADA and SSDI] statutory schemes differ is not enough to survive summary judgment in light of Cleveland. An ADA plaintiff must offer a more substantial explanation to explain the divergent positions taken, or else summary judgment could never be granted." Motley v. N.J. State Police, 196 F.3d 160, 166 (3d Cir. 1999). Under Cleveland, "each case should be decided on its unique facts." Id. at 164. The Fourth Circuit has held that a plaintiff does not "automatically avoid[] summary judgment when the defendant asserts that the plaintiff's sworn statement of total disability in her SSDI application has negated the 'qualified individual' element of her ADA case." E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 378 (4th Cir. 2000) (emphasis in original). The Seventh Circuit has similarly concluded that "[e]xplanations of the sort Cleveland requires are, in short, contextual." Lee v. City of Salem, Ind., 259 F.3d 667, 675 (7th Cir. 2001). The Fifth Circuit has also held that a plaintiff's explanation that her SSDI statements "did not take into account the prospect of accommodation as contemplated under the ADA" is insufficient under Cleveland, at least when the plaintiff has also made "specific factual statements which are inconsistent with her claim" that she could perform the essential

functions of her job.  Reed v. Petroleum Helicopters, Inc., 218 F.3d 477, 479-80 (5th Cir. 2000).

Pena's second argument is that she has produced evidence of a reasoned explanation sufficient to allow a jury to find she was a "qualified individual."  We agree with the district court that she has not met her burden under Cleveland.  In her SSDI application, Pena offered no qualification of any sort to her statement that she was totally disabled as of March 8, 2013.  She submitted this application under penalty of perjury, and was represented by counsel at the time.  From the ALJ's decision that Pena was totally disabled due to somatoform disorder as of March 8, 2013, it is evident that cause and that date are what Pena had argued to get SSDI benefits.  Somatoform disorder is not the disability for which Pena had claimed to Honeywell she needed reasonable accommodations.  This SSDI evidence cuts against her and against the argument that she has provided a reasonable explanation.

As the district court noted, Pena's deposition testimony does not explain, but rather reinforces, the inconsistency between her SSDI application and her claims in this case.  Pena was represented by counsel at her deposition.  During Pena's deposition, Honeywell asked Pena several times to explain the statements in her SSDI application, and Pena repeatedly stated that she was totally disabled as of March 8, 2013.  She did not

state that she could have performed the essential functions of her prior job with reasonable accommodations as of March 8, 2013. Honeywell also asked Pena to explain why her SSDI application stated that she was unable to work as of March 8, 2013, when her ADA claim "assert[s] that if [she] had been given an accommodation, [she] could have done [her] job." Pena responded, "[Honeywell] asked me, [d]o you want to go back to work, and I said, I don't want to see these people ever anymore." Honeywell again asked Pena to explain why she stated in her SSDI application that she was unable to work as of March 8, 2013. Pena responded, "[w]hen you fill out the application, they ask you when was your last day of work," but as Honeywell pointed out at the deposition, "[t]hat's not what the application says. The application says, 'I became unable to work because'" of "my disabling condition on March 8, 2013." Not only did Pena not explain the discrepancy, but she also reaffirmed at her deposition that she was entitled to SSDI benefits retroactive as of March 8, 2013.

Pena attempts to avoid her admissions at deposition through several arguments. First, Pena relies on the late affidavit she submitted, attempting to explain away her deposition admissions with statements not made at deposition and contradicting the statements she did make.[8] Cleveland itself held

_____

[8] The affidavit states that (1) Pena's SSDI attorney advised her to use March 8, 2013, as the onset date of her

- 23 -

that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland, 526 U.S. at 806. This court also "refuse[s] to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit." Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001). "When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994). Pena's affidavit is in obvious conflict with her deposition testimony, and Pena has not sufficiently explained or resolved this disparity. Nothing in Cleveland or in First Circuit law permits a plaintiff to do a volte-face from her deposition admissions.

---

disability, (2) if the SSDI application or the ALJ had asked if Pena needed reasonable accommodations to work, she would have responded "yes," (3) if Honeywell had granted Pena's accommodations request, she would have returned to work and would not have applied for SSDI benefits, and (4) Pena filed for SSDI benefits because she could no longer work due to her worsened depression caused by Honeywell terminating her employment.

- 24 -

Second, Pena disclaims responsibility and blames her SSDI attorney for choosing March 8, 2013, as the onset date of her disabilities.  When Honeywell asked her, "[d]id someone advise you to use the date March 8, 2013 on your application?", Pena did not say she did so on advice of counsel.[9]

Third, Pena attempts to excuse her admissions in her deposition testimony by saying in her brief that she did not understand the relevant questioning at her deposition.  Pena claims that Honeywell's questions were "confusing" and constituted a "blatant attempt to trip up Pena into admitting that she is lying and trying to manipulate the system."  Pena had counsel with her at the time, who made no such objections.  Pena was also provided with an interpreter at the deposition.  In any event, the record shows that Honeywell asked straightforward questions, was upfront about the Cleveland issue, and gave Pena many opportunities to explain the discrepancy.

Pena's brief attempts a variant argument that she was disabled when she applied for SSDI benefits, that she was not disabled on March 8, 2013, and that she became disabled in between. She argues that her condition worsened after March 8, 2013, and that that worsening was because Honeywell "denied her request for

---

[9]     Instead, in response to this question, Pena stated that from March 8, 2013, she was prescribed heavier dosages of her medications.

a reasonable accommodation when it sent her home" that day.  This is a newfound argument and is not supported by the record.  That Pena's condition worsened later does not mean she was well enough to perform the essential functions of her job on March 8, 2013.  An individual who is totally disabled may still suffer from worsened symptoms later.  In Pena's sworn SSDI application and at her sworn deposition, she gave March 8, 2013, her last day at work, as the date on which she became totally disabled.

Under Cleveland, Pena has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," namely, that she is a "qualified individual."  See Cleveland, 526 U.S. at 806 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  The district court properly granted Honeywell summary judgment as to Pena's claim that her employment was terminated because of her disabilities.

B.   Alleged Failure to Accommodate

The ADA's prohibition of employment discrimination includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  To establish a claim for failure to accommodate, a plaintiff must produce sufficient evidence for a reasonable jury to find that (1) she was disabled within the meaning of the ADA,

- 26 -

(2) she was a "qualified individual," and (3) the defendant, despite knowing of her disability, "did not reasonably accommodate it." See Tobin, 433 F.3d at 107; 42 U.S.C. § 12111(8).

Pena's failure to accommodate claim requires sufficient evidence that she was a "qualified individual." See Tobin, 433 F.3d at 107; 42 U.S.C. § 12111(8). She has not presented such evidence. Rather, the undisputed evidence, as discussed earlier, includes admissions at her deposition and in her briefing that she was not a "qualified individual," totally apart from the statements in her SSDI application. The district court properly granted Honeywell's motion for summary judgment as to Pena's failure to accommodate claims.

## C.   Alleged Retaliation

Pena's appellate brief argues that Honeywell retaliated against her for reporting what she calls "discriminatory" conduct to Honeywell's human resources department. But part of her claim was not made in the trial court.

The disposition of Pena's earlier claims does not dispose of her retaliation claims. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). "To prove a claim of retaliation, a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Id. at 25. "Once a

- 27 -

plaintiff makes [a prima facie] showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse action."  D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).  "If the defendant does so, the burden shifts back to the plaintiff to show that the proffered legitimate explanation is pretextual, meaning that the defendant was motivated by a retaliatory animus."  Id.

Pena argues on appeal that there are disputed issues of material fact as to whether Honeywell retaliated against her by terminating her employment because (1) Pena had requested to remain in the respiratory department on March 8, 2013, due to her anxiety and depression, and (2) Pena had complained to Gouveia in February 2013 that her supervisor did not honor her request for meal breaks at very specific times, when she needed to eat because of her diabetes.

We do not engage the first argument.  Pena did not make the argument about her request to remain in the respiratory department in her opposition to Honeywell's motion for summary judgment (or, even belatedly, in her objections to the report and recommendation).  Pena has also failed to develop this argument on appeal, devoting a single sentence to the issue in her brief.  For both reasons, the argument about retaliation due to her request to remain in the respiratory department is waived.  See Kozikowski v.

Toll Bros., Inc., 354 F.3d 16, 23 (1st Cir. 2003); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Pena's argument that she was retaliated against for making requests as to break times, described in footnote 3, relies solely on temporal proximity in an effort to establish causality. Pena points to the fact that her employment was terminated four months after she made the complaint about break times. As the district court found, this four-month period "cannot carry the day." Pena, 2018 WL 582579, at *2. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Cherkaoui v. City of Quincy, 877 F.3d 14, 28-29 (1st Cir. 2017) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). "Without some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action." Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010). The gap of four months, on its own, is not "very close" for establishing causality.[10]  See Cherkaoui, 877 F.3d at 29.

_____

[10]    We have previously explained that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity." Calero-Cerezo, 355 F.3d at 25.  But see Sanchez-Rodriguez v. AT&T Mobility Puerto Rico,

- 29 -

Independently, "[t]he larger picture undercuts any claim of causation." Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). Here, the district court correctly observed that after Pena's single comment to Gouveia about break times, "the dialogue between [Pena] and Honeywell was singularly focused on the issue of her assignment to the Molding Department." Pena, 2018 WL 582579, at *12. The evidence overwhelmingly shows that Honeywell terminated Pena's employment on the basis of job abandonment, and there is insufficient evidence from which Pena could establish that this reason was pretextual.

Pena now claims that Honeywell's adverse employment actions against her actually began the month after she made the complaint about break times, when she went home after refusing to work in the molding department on March 8, 2013. But again, this is belied by the record, because the conversations immediately preceding Pena's decision to go home on March 8, 2013, explicitly reference her refusal to work in the molding department, and the subsequent communications between Honeywell and Pena were exclusively focused on her desire to be exempt from working in the molding department. The district court properly granted

_____

Inc., 673 F.3d 1, 15 (1st Cir. 2012) (temporal proximity sufficient to establish a prima facie case of causality when plaintiff filed an EEOC complaint about religious discrimination and was placed on active disciplinary status three months later).

Honeywell's motion for summary judgment as to Pena's retaliation claims.

                                III.

       The district court's grant of summary judgment is affirmed.

                   **— Separate Opinion Follows —**

**LIPEZ**, <u>Circuit Judge</u>, **concurring in part and dissenting in part.** Judicial estoppel is an equitable doctrine designed to safeguard courts from misuse by litigants who attempt to change positions in the expediency of the moment. Relying on that doctrine to deny plaintiff Pena an opportunity to seek a remedy before a jury for disability discrimination, my colleagues misapply the Supreme Court's decision in <u>Cleveland</u> v. <u>Policy Management Systems Corp.</u>, 526 U.S. 795 (1999). Indeed, at the heart of <u>Cleveland</u> is a recognition that courts have been too quick to find a conflict between claims for Social Security Disability Insurance ("SSDI") benefits and claims alleging discrimination under the Americans with Disabilities Act ("ADA"). The Court held that a plaintiff could pursue a reasonable accommodation claim despite an earlier SSDI application asserting total disability if she provides an "explanation . . . sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" <u>Id.</u> at 807. In this case, the explanation offered by Pena could warrant that conclusion by a reasonable jury. Therefore, I respectfully dissent.[11]

---

[11] I join only the portion of the majority opinion affirming summary judgment for Honeywell on Pena's retaliation claims.

Pena worked at a Honeywell manufacturing facility for approximately five years, from 2008 to 2013, primarily in the respiratory department. Suffering from anxiety and depression, Pena experienced several medical issues throughout that period, and the company routinely accommodated her needs by, for example, allowing her extended time away from the job.

In October 2012, after Honeywell decided to cross-train employees, Pena trained in the molding room. She took a medical leave from November 2012 to January 2013, attributed in part to her depression. Upon her return, Pena started working in the molding room for eight to twelve hours per week, where she found that the pace, noise, smell, and enclosure significantly exacerbated her symptoms. Following her complaint about the conditions in late February 2013, she was granted a temporary reprieve from working in the molding room pending further review. On March 8, 2013, she left work after her supervisor refused her request not to work there.

Then followed three months of back and forth between Honeywell, Pena's attorney, and her doctor about Pena's desire to continue working outside the molding room. She experienced worsening anxiety and stress associated with her employment uncertainty. Honeywell terminated Pena's employment on June 17, 2013 for "job abandonment."

On September 20, 2013, Pena submitted an application for SSDI benefits in which she stated, "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON March 8, 2013. I AM STILL DISABLED." On April 16, 2015, Pena filed this action against Honeywell alleging disability discrimination, effectively claiming that she could work, albeit with an accommodation. Six months later, on October 16, 2015, her SSDI application was approved. Her seemingly inconsistent disability and discrimination claims generate the judicial estoppel issue before us.

## II.

### A. Judicial Estoppel Principles

The Supreme Court said virtually nothing in Cleveland about the substance of the doctrine of judicial estoppel, but the principles governing that doctrine are well-established. The purpose of judicial estoppel is to "safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Although application of judicial estoppel is "not reducible to any general formula[]," several conditions typically drive a court's decision to apply the doctrine. New Hampshire, 532 U.S. at 750. First, the litigant's earlier and later positions "must be clearly inconsistent." Id. (internal quotation marks omitted). Second,

the estopped party must have persuaded a court to accept its prior position.  Alt. Sys. Concepts, Inc., 374 F.3d at 33.[12]

In addition, the Court cautioned that judicial estoppel is an equitable doctrine, applied as an act of discretion.  New Hampshire, 532 U.S. at 750.  Concerns about fairness inform the analysis.  Id. at 751; see also James Wm. Moore, 18 Moore's Federal Practice § 134.31 (3d ed. 2012) ("Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind.").  An advantage unfairly gained by the litigant -- or a detriment unfairly imposed on the other party -- weighs in favor of estoppel.  New Hampshire, 532 U.S. at 751.  Judicial estoppel thus disfavors intentional inconsistencies and provides leniency for a plaintiff who operated in good faith in presenting conflicting positions.  See id. at 753.

**B.  The Cleveland Analysis**

In Cleveland, the Court held that there is no presumption of judicial estoppel against a claim for failure to accommodate an employee's disability when the employee has already received SSDI benefits premised on the inability to work.  Cleveland, 526 U.S. at 805.  The Court reasoned that "there are . . . many situations

---

[12] Presumably, the ALJ's award of benefits in SSDI cases constitutes an acceptance of the prior statement by a court.  We have that circumstance here.

in which an SSDI claim and an ADA claim can comfortably exist side by side." Id. at 802-03. Accordingly, a plaintiff may "defeat summary judgment" if she can provide "a sufficient explanation" for her "two seemingly divergent" claims. Id. at 797, 806-07.

Cleveland tells us that we must conduct the inconsistency analysis "assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement." Id. at 807. This assumption binds the plaintiff to her prior assertion, establishing the contours of the conflict that the plaintiff must explain. See, e.g., Lee v. City of Salem, 259 F.3d 667, 674 (7th Cir. 2001). Although the Court in Cleveland did not prescribe the details of the inconsistency inquiry, the Court indicated that an ADA claim could not survive if there were "directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" Cleveland, 526 U.S. at 802. Such irreconcilable assertions of fact "present precisely the sort of threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent." Bos. Gas Co. v. Century Indem. Co., 708 F.3d 254, 264 (1st Cir. 2013).

By contrast, an SSDI "representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for the purposes of the Social Security Act.'" Cleveland, 526 U.S. at

802. "So understood, a quasi-legal assertion of this kind does not foreclose the possibility that the individual is nonetheless 'qualified' to work for purposes of the ADA." Lee, 259 F.3d at 673. The Court's reasoning acknowledged that the two statutes reflected contrasting conceptions of disability. Enacted in 1956, the SSDI program reflects a view of disability as a certifiable medical excuse from work. For some people, disabilities impose medical obstacles to employment. Matthew Diller, Dissonant Disability Policies: The Tensions Between the Americans with Disabilities Act and Federal Disability Benefit Programs, 76 Tex. L. Rev. 1003, 1005-06 (1998). Adopted nearly forty years later, the ADA reflects the different view that a disability will not necessarily foreclose participation in the workforce. Id. The ADA thus requires employers to remove barriers, where feasible, that impede persons with disabilities from performing the essential functions of their jobs. Id.

The Cleveland Court recognized that, "in context, these two seemingly divergent statutory contentions are often consistent," such that individuals may qualify for SSDI and also remain capable of continuing in their jobs. Cleveland, 526 U.S. at 797. In so concluding, the Court rejected the notion that an SSDI recipient who seeks ADA protection is necessarily gaining an unfair advantage by "double dipping" into two forms of financial support for disability. See Diller, Dissonant Disability Policies

at 1035 (listing cases in which courts were sidetracked by double dipping before Cleveland); Lauren Lowe, Note, What Employees Say, or What Employers Do: How Post-Cleveland Decisions Continue to Obscure Discrimination, 62 Vand. L. Rev. 1245, 1272 (2009) (listing cases after Cleveland). While a plaintiff must do more than merely point to the difference in statutory standards for "disability," the legal context of the two claims is essential to understanding the Cleveland inquiry. See DeCaro v. Hasbro, Inc., 580 F.3d 55, 62 (1st Cir. 2009).

### III.

Applying the inconsistency analysis required by Cleveland, and guided by the principles of judicial estoppel, I disagree with the majority's conclusion that Pena's SSDI application statements "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON March 8, 2013" and "I AM STILL DISABLED" contradict irreconcilably her reasonable accommodation claim, such that judicial estoppel is warranted.

### A.   The Prior Statement

The "previous sworn statement" at issue here actually consists of the two statements in Pena's SSDI application that she "became unable to work" on March 8, 2013 and "[is] still disabled." Cleveland instructs us to assume Pena's good-faith belief in these two prior assertions. Hence, to assess the ostensible conflict between those SSDI assertions and the particulars of her ADA

reasonable accommodation claim, we have to understand how Pena explains her good-faith belief in these assertions.

Pena argues that she understood herself to have become disabled on March 8 "only after her employer denied her request for a reasonable accommodation." Her brief points to her deposition, in which she was asked for the date from which she was "no longer able to work at all." She responded, "[w]hen I was kicked out of that place." When asked if she "agree[d] that since March 8, 2013 you have been unable to perform any sort of work," she responded, "[y]es." Asked to identify the point when she "bec[a]me unable to work at all," she responded, "[t]he same moment that they denied me my job without accommodating me." Pena argues that it is essential context that this denial preceded her representation of disability because this denial framed her understanding of her situation when she sought SSDI benefits.

Her affidavit, filed as part of her opposition to Honeywell's motion for summary judgment, makes this exact point: "I did not apply for SSDI benefits until September 20, 2013, only after I had exhausted every possible effort of getting the needed accommodation." Although this affidavit is in the record, the district court dismissed its relevance, quoting Cleveland for the premise that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later

affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Pena v. Honeywell Int'l Inc., No. CV 15-179 WES, 2018 WL 582579, at *2 (D.R.I. Jan. 29, 2018) (quoting Cleveland, 526 U.S. at 806-07). The district court misses the point of this affidavit. Its very purpose is to explain, as Cleveland says she must do, how she could have a good-faith belief in the truth of her SSDI assertions, while still being able to perform the essential functions of her job with a reasonable accommodation.

When Pena filed her SSDI application in September, she knew that the accommodation that she had demanded for more than three months had been repeatedly and decisively denied to her. Given this circumstance, a jury could reasonably find that Pena plausibly believed on September 20, 2013 that she became "unable to work" as of March 8, 2013. See Lowe, How Post-Cleveland Decisions Continue to Obscure Discrimination at 1278 (observing that denial of an accommodation may explain the claimant's good-faith belief in the assertion to the Social Security Administration that she was unable to work); see also Diller, Dissonant Disability Policies at 1042 (noting that statements of "total disability" on a disability benefit application may be based on the individual's experience that no employer will employ her because of her

- 40 -

disability, even if she could perform the essential elements of the job with accommodation).

The majority wrongly chides Pena because she "offered no qualification" for her assertion of disability on her SSDI application. Cleveland expressly stated that such qualification is not required. Since the SSDI definition of disability does not take accommodation into account, an applicant need not "refer to the possibility of reasonable accommodation when she applies for SSDI." Cleveland, 526 U.S. at 803. The particulars of this case reflect the wisdom of that legal proposition. In her affidavit, Pena averred:

> When I stated on my SSDI application that I was unable to work as of March 8, 2013, I meant that I was totally disabled only for the purposes of receiving SSDI benefits. The SSDI application did not ask if I needed any accommodations of a disability in order to work and no one at any of the hearings asked. Had I been asked, I would have responded, "Yes."

Without question, Pena could supportably argue to a jury that she held a good-faith belief in the accuracy of her SSDI application, given her understanding of the process, while still being in a position to perform the essential functions of her job with a reasonable accommodation.

## B. Ability to Perform Essential Functions

We must now evaluate, pursuant to Cleveland, Pena's insistence that, despite her good-faith belief in her SSDI

assertions of total disability, she could perform the essential functions of the job, as required for her ADA claim.

The record plainly permits a jury to find that Pena could have continued to perform the job she had held before Honeywell insisted that she work in the molding room.  As Pena describes, her years of work at the facility before the rotation requirement was imposed reflect her ability to fulfill the requirements of the job beyond the molding room.  In addition, her efforts to be reinstated at Honeywell, including the submission of three doctor's notes, constitute further evidence that she could have worked with her requested accommodation.  In particular, Dr. Greer's March 4 letter (delivered to Honeywell on March 8), stated that Pena was "completely capable of working in other settings," but that she experienced "exacerbation of her anxiety symptoms . . . . when she is being sent to the moulding [sic] room as opposed to the more typical duties to which she is accustomed."[13]

---

[13] Whether the request not to work in the molding room is a reasonable accommodation is a separate question the jury would need to answer in evaluating Pena's ADA claim.  The district court, adopting the report and recommendation of the magistrate judge, concluded that if estoppel did not apply, a genuine dispute of material facts about "whether rotation to the Molding Department was an essential function of Plaintiff's job and whether Plaintiff participated in good faith in the interactive process" foreclosed summary judgment on the reasonable accommodation claim.  Pena, 2018 WL 582579, at *10.

The majority compares Pena's case to Sullivan v. Raytheon Co., 262 F.3d 41 (1st Cir. 2001), in which we affirmed summary judgment for the employer because the plaintiff made repeated claims that he was totally disabled and provided "no evidence" that he could work with an accommodation. Id. at 48. The facts here are strikingly different. Pena has developed a record that would support a jury finding that she could have continued to work at Honeywell with her requested accommodation. At summary judgment, courts are obliged to draw record inferences on behalf of the nonmovant. Yet the majority draws every inference against Pena.

Honeywell also attempts to undercut Pena's ADA claim by pointing out that she sought an accommodation for anxiety and depression until June 2013, but she was deemed "totally disabled" by somatoform disorder as of March 2013. The company argues that, given her total disability, she would not have been able to work even if her anxiety and depression had been accommodated. Honeywell's argument, however, ignores Cleveland's admonition that ostensibly conflicting legal conclusions derived from different disability processes must be evaluated in their legal context.

As Cleveland noted, the SSDI program provides for categorical determinations of eligibility for benefits to facilitate the processing of the large number of cases handled by the Social Security Administration. See 526 U.S. at 804. Pursuant

to the five-step eligibility procedure, an individual may be deemed totally disabled without regard to her actual ability to work if her condition "meet[s] or equal[s]" an impairment in the enumerated list of impairments. Id. at 804. The eligibility finding in such a case stems from the "regulatory determination that most individuals with certain disabilities cannot work." Anne E. Beaumont, Note, This Estoppel Has Got to Stop: Judicial Estoppel and the Americans with Disabilities Act, 71 N.Y.U. L. Rev. 1529, 1567 (1996).

The ALJ determined that Pena has "somatoform disorder," one of the listed impairments under SSDI regulations, based on the testimony of an impartial medical expert at the SSDI hearing. Because Pena met the severity criteria for a finding of categorical disability, the ALJ bypassed individual review of her capacity for work. This procedural history undermines Honeywell's argument that the ALJ determined that Pena is incapable of working even with an accommodation. It also exposes the baselessness of the majority's assumption that Pena argued somatoform disorder to the ALJ. As noted, the only statements in the record that Pena made in the course of her SSDI application are that she "became unable to work" on March 8, 2013 and "[is] still disabled."

The majority nonetheless erroneously compares Pena's circumstances to cases in which the plaintiff made specific, "purely factual" statements about disability that were

incompatible with the undisputed job requirements. Unlike those cases in which the plaintiffs' descriptions of their injuries conflicted with their asserted ability to work with an accommodation, Pena's blanket statement of disability in her SSDI application does not belie her ADA claim. For example, in Reed v. Petroleum Helicopters, Inc., 218 F.3d 477 (5th Cir. 2000), cited by the majority, the plaintiff made "specific factual statements" about her inability to sit for an extended period, which the court found incompatible with her claimed ability to fly a helicopter. Id. at 480.

Likewise, in Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999), also cited by the majority, the plaintiff claimed headaches, backpain, and knee aches when standing and running, and he had been found "totally and permanently incapacitated for state police officer duties" by the state police medical board. Id. at 166. On that record, the plaintiff's "sole[]" reliance on the difference between the statutory schemes was "fatal." Id. at 167; see also Feldman v. Am. Mem'l Life Ins. Co., 196 F.3d 783, 791-92 (7th Cir. 1999) (concluding that plaintiff's SSDI benefits application assertions that she could not drive long distances, work a six- to eight-hour day, or carry a briefcase were incompatible with her ADA claim that she could work as a traveling salesperson); Parker v. Columbia Pictures Indus., 204 F.3d 326, 333 (2d Cir. 2000) (holding that "summary

judgment may be appropriate under <u>Cleveland</u> where the SSDI and ADA claims 'involve directly conflicting statements about purely factual matters'") (quoting <u>Cleveland</u>, 526 U.S. at 802); <u>cf.</u> <u>Felix v. N.Y. City Transit Auth.</u>, 154 F. Supp. 2d 640, 651 (S.D.N.Y. 2001), <u>aff'd</u>, 324 F.3d 102 (2d Cir. 2003) (holding judicial estoppel unwarranted where, inter alia, the plaintiff "stated in general terms that she could not work as a result of her disabling condition without offering particular facts as to that condition"). Pena's SSDI application did not include specific factual assertions. Rather, the conflict here between Pena's asserted inability to work and her asserted ability to work with accommodation is exactly the nuanced contradiction that <u>Cleveland</u> recognized as "often" permissible. <u>Cleveland</u>, 526 U.S. at 797.

Indeed, in a similar case, the Third Circuit concluded that limited prior factual assertions did not foreclose a finding that the plaintiff could perform the essential functions of her job. In <u>Turner</u> v. <u>Hershey Chocolate U.S.</u>, 440 F.3d 604 (3d Cir. 2006), the employer Hershey decided to require rotation of employees among three different assembly stations in July 2001. <u>Id.</u> at 607. Turner objected that she could not do one of the rotations, which required standing, bending, and twisting, was considered more difficult, and was not part of her job requirements up to that point. <u>Id.</u> Hershey determined that Turner could not continue to work in her position without this rotation, and "she

was deemed a disabled employee."  Id.  On a subsequent SSDI benefits application, Turner stated that she had been unable to work since July 2001, and she was awarded total disability benefits from that time.  Id.  The Third Circuit determined that Turner was not judicially estopped from pursuing an ADA claim:

> As discussed in Cleveland, this statement of inability to work must be read as lacking the qualifier of reasonable accommodation, which did not apply for purposes of her SSDI application, but does apply for purposes of her ADA claim.  Thus, in her SSDI application, Turner was saying, in effect, "I am unable to work without reasonable accommodation."  This statement is not inconsistent with her ADA claim, in which she is saying, in effect, "I am able to work with reasonable accommodation."

Id. at 610.  To the extent that Turner made a factual assertion about pain that limited her ability to work, the court found it did not "foreclose the possibility that she could perform [her job] with reasonable accommodation."  Id.  at 609.  It therefore remanded the case to allow a jury to decide her ADA claim.  Id. at 610, 613.

The parallels to this case are evident: the asserted date on which the plaintiff was "unable to work" for purposes of SSDI benefits does not "foreclose the possibility" that, at the same time, she could have continued working with a reasonable accommodation.  In the absence of an irreconcilable factual conflict, her prior disability claim and her ADA claim could be

reconciled. Hence, judicial estoppel was not required under Cleveland.

## IV.

Pena's case does not implicate any of the considerations warranting the application of judicial estoppel. The district court found her case "sympathetic," without any "indication that she ha[d] taken any positions in bad faith." See Pena, 2018 WL 582579, at *9. There is also no indication of her gaming the system or of causing an unfair detriment to Honeywell. Rather, a reasonable jury could conclude from this record that Pena believed herself unable to work because of Honeywell's emphatic rejection of her request for an accommodation and that she could have continued to work if provided that accommodation. Pena's explanation is thus sufficient to show that her two claims are reconcilable and that judicial estoppel should not be applied to foreclose her pursuit of ADA relief. Cleveland requires nothing more. Pena was entitled to bring her ADA claim to a jury. I therefore dissent from the majority's decision denying her that opportunity.